892 P.2d 629

**CITY OF FARMINGTON,**
**Plaintiff–Appellant**

v.

**Harrison D. BENALLY, Jr.,**
**Defendant–Appellee.**

**No. 15562.**

Court of Appeals of New Mexico.

Feb. 20, 1995.

Stephen S. Hamilton, Montgomery & Andrews, P.A., Santa Fe, Jay Burnham, City Atty., and Randolph M. Toth, Asst. City Atty., Farmington, for plaintiff-appellant.

Robert H. Graham, Farmington, for defendant-appellee.

Herb Yazzie, Atty. Gen. and Helen E. Avalos, Asst. Atty. Gen., Navajo Nation Dept. of Justice, Window Rock, Navajo Nation, AZ, for amicus curiae.

## OPINION

FLORES, Judge.

The City of Farmington (the City) appeals an order dismissing the charges against Defendant. Holding that *Benally v. Marcum*, 89 N.M. 463, 553 P.2d 1270 (1976), remains good law, we affirm.

A Farmington city police officer observed a vehicle weaving in its lane, repeatedly crossing the center divider, and speeding within the city limits. The officer engaged his emergency equipment in order to stop the vehicle. However, the vehicle sped off. A high-speed chase ensued, during which the officer observed Defendant, the driver of the vehicle, committing other traffic violations. The vehicle was finally pulled over. By this time, however, it was almost three miles within the boundaries of the Navajo Reservation. Defendant was identified as an enrolled member of the Navajo Nation.

At the time of the stop, the officer noted an odor of alcohol about Defendant, as well as slurred speech and bloodshot, watery eyes. Defendant was arrested and transported to the Farmington city police station. He was charged with a number of offenses, including driving under the influence of intoxicating liquor and/or drugs (DWI). He was convicted in magistrate court and appealed to district court, where his motion to dismiss for lack of jurisdiction was granted.

The district court relied on *Benally*, a New Mexico Supreme Court case where under nearly identical facts, a member of the Navajo Tribe was pursued onto the reservation and arrested for violation of city traffic ordinances. *Id.* at 464, 553 P.2d at 1271. Our Supreme Court held that the arrest was illegal because it violated tribal sovereignty by circumventing the procedure for extradition from the Navajo Reservation. *Id.* This holding was based on well-established law that Indian tribes have the right to self-government that may not be impaired or interfered with by the state, absent congressional approval. *Id.* at 465–66, 553 P.2d at 1272–73; *see Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).

■ The extradition procedure of the Navajo Nation, *see* Navajo Trib.Code tit. 17, §§ 1001, 1002 (1970), remains essentially the same as it has been since its creation in 1956. *Id.* § 1951 (1978), legislative history. Here, in arresting Defendant and taking him into custody, without following the Navajo extradition procedure, the City chose not to comply with the Tribe's own laws on this matter. This, in turn, challenges the Tribe's right to make and enforce laws for Navajo citizens on Navajo land, which goes to the heart of the right of self-government. Therefore, on the strength of *Benally*, Defendant's arrest must fail. *Benally*, 89 N.M. at 465, 553 P.2d at 1272 (citing *Arizona ex rel. Merrill v. Turtle*, 413 F.2d 683, 685–86 (9th Cir.1969)).

The City argues that *Benally* is no longer good law because of changes in New Mexico law that occurred after *Benally*. In 1981, New Mexico passed a fresh pursuit law for misdemeanors, authorizing New Mexico law enforcement officers to cross in-state jurisdictional lines in fresh pursuit of misdemeanants and place them under arrest. NMSA 1978, § 31–2–8 (Repl.Pamp.1984). Since *Benally* made reference to the fact that New Mexico law did not then authorize fresh pursuit arrest for mere misdemeanors, as op-

posed to felonies, the City now argues that the fundamental underpinnings for the *Benally* holding have been eliminated, and the case must fall. We do not agree.

First, the holding in *Benally*, that the arrest was illegal, was not based on the lack of a misdemeanor fresh pursuit law; rather, it was based on the existence of a valid procedure for extradition in the Navajo Tribal Code. *Benally*, 89 N.M. at 464, 553 P.2d at 1271. In deciding the issue of the legality of the arrest, our Supreme Court did not address whether the arresting officers had jurisdiction to pursue the defendant onto the reservation. *Id.* at 464–66, 553 P.2d at 1271–73. Because the authority of the officer to pursue an offender onto the reservation was not the basis for holding the arrest illegal in *Benally*, a state statute unilaterally changing the authority to pursue outside the City does not affect the legality of the arrest in this case.

Second, the City argues that the misdemeanor fresh pursuit statute does not interfere with tribal self-government because it is not directed at the same kinds of suspects as the Navajo extradition procedure. For example, the Navajo extradition procedure could arguably contemplate a more orderly and relaxed set of circumstances, which would allow time to petition the Governor of the Navajo Nation for assistance and otherwise proceed in due course through governmental channels, unlike a fresh pursuit situation. In this regard, we do not agree that the Navajo extradition procedure is only directed toward those suspects who can be pursued in a more leisurely fashion rather than those under fresh pursuit. We do not believe that it makes any difference whether the suspect has been freshly pursued onto the reservation or whether the suspect has been located on the reservation after some investigation. Either way, there is a Navajo tribal procedure for dealing with the suspect.

Failure to follow that procedure violates tribal sovereignty.

The City also argues that the high degree of its own sovereign interest in the subject matter—prosecuting DWI offenders—is evidence that *Benally* should now yield to the weight of compelling public policy. However, as we held in *State v. Yazzie*, 108 N.M. 677, 777 P.2d 916 (Ct.App.), *cert. denied*, 108 N.M. 681, 777 P.2d 1325 (1989), the degree of state interest in the subject matter cannot be the determinative factor. In *Yazzie*, a serious crime with potential loss of evidence was involved, and yet this Court held that tribal extradition procedure must be followed. The City may not excuse itself from compliance with Navajo law merely by reference to public policy, no matter how meritorious. Therefore, we hold that, based upon the continued viability of *Benally*, the arrest of Defendant in this case was illegal.[1]

Determining that the arrest is illegal does not, however, dispose of this case. The second part of the *Benally* holding was that because the arrest was illegal, the district court did not have jurisdiction to try the defendant. In deciding this portion of *Benally*, the Court distinguished its earlier decision in *State v. Wise*, 58 N.M. 164, 267 P.2d 992 (1954), concluding that the pursuit involved in *Wise* was a felony fresh pursuit recognized by law, while the pursuit in *Benally* was a misdemeanor fresh pursuit not recognized by law.

The City argues that because misdemeanor fresh pursuit is now recognized, the basis for not following *Wise* no longer exists. In other circumstances we might agree. In fact, we have declined to follow *Benally* in other cases. *See State v. Gibson*, 113 N.M. 547, 557, 828 P.2d 980, 990 (Ct.App.), *cert. denied*, 113 N.M. 524, 828 P.2d 957 (1992); *State v. Nolan*, 93 N.M. 472, 474–75, 601 P.2d 442, 444–45 (Ct.App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979). Here, however, we

1. We note that intergovernmental agreements to facilitate extradition are, at least theoretically, available for these parties to consider. We also observe the language of New Mexico's Mutual Aid Act, NMSA 1978, Sections 29–8–1 to –3 (Repl.Pamp.1994), whereby a "public agency," including municipalities and Indian governments may agree to exercise reciprocal law enforcement authority by a process of cross-deputization. Although some New Mexico governmental authorities may have such agreements with the Navajo Nation, it does not appear that the Navajo Nation and the City of Farmington have entered into any such agreements.

are concerned with the illegal arrest of an Indian on Indian land.

Indians retain a unique status in this country. *See Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832); *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831). Respect for the sovereignty of an Indian government and the special status of its citizens, compels a state to consider jurisdictional factors differently from the more ordinary instance of an extraterritorial arrest of a citizen of another state or even a foreign government. Precedent supports the proposition that suspects arrested illegally in another state, or in another country, may nonetheless be subject to the criminal jurisdiction of the prosecuting state, and we do not disturb either the rationale or the conclusion of those cases. *See United States v. Alvarez-Machain,* 504 U.S. 655, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992); *Gibson,* 113 N.M. at 557, 828 P.2d at 990. We only observe that those cases do not account for the special factors enumerated herein, that are unique to considering a state's unlawful arrest of Indians on Indian land.

As the City argues, and as discussed above, our Supreme Court in *Benally* did note the distinction between fresh pursuit arrest for felonies versus misdemeanors. *Benally,* 89 N.M. at 466, 553 P.2d at 1273. Our Supreme Court also addressed what it saw as the inherent unfairness in state prosecutions based upon an illegal arrest elsewhere and observed that the unfairness was "especially true when we consider that the Navajo Tribe has provided specific procedures for extraditing persons accused of crime from the reservation," which the Court described as "the Navajo Tribal government's exercise of the sovereign power vested in them." *Id.* at 466–67, 553 P.2d at 1273–74.

This latter point regarding tribal sovereignty proves to be the distinction that makes a difference—the abiding bedrock that makes *Benally* as compelling a result today as it was when authored almost twenty years ago. The Navajo Nation has specific laws regarding fugitive Navajo criminal suspects and how they will be treated; precisely the type of law that goes to tribal governance of its own people. Therefore, it is clearly a matter of tribal interest that must be protected. *See Chino v. Chino,* 90 N.M. 203, 561 P.2d 476 (1977). The state courts cannot ignore these laws without a degree of infringement on tribal sovereignty that cannot be sanctioned. Therefore, even though a state court may exercise personal jurisdiction over a citizen of another state or foreign country who has been illegally arrested and returned for criminal prosecution, we believe that when the suspect is an Indian illegally arrested on Indian land, the court may not exercise its jurisdiction over his or her person. *Contra Davis v. Muellar,* 643 F.2d 521 (8th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1981); *State v. Spotted Horse,* 462 N.W.2d 463 (S.D.1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991); *but see,* Felix S. Cohen, *Handbook of Federal Indian Law* 358 (1982 ed.) (discussing *Benally* with approval and characterizing cases to the contrary as "ill-considered").

In conclusion, we hold that the arrest of Defendant on the Navajo Reservation is illegal and that the district court does not have jurisdiction to hear the charges against him. Accordingly, the order of dismissal is affirmed.

**IT IS SO ORDERED.**

APODACA, C.J., and BOSSON, J., concur.