**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rayford Hanson PATCH, Defendant–Appellant.**

**No. 96–10203.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 1997.

Decided May 27, 1997.

Bruce Feder, Phoenix, Arizona, for defendant-appellant.

Joan G. Ruffennach, Assistant United States Attorney, Phoenix, Arizona, for plaintiff-appellee.

Before GOODWIN, BRUNETTI, and FERNANDEZ, Circuit Judges.

**GOODWIN, Circuit Judge:**

Rayford Patch, a member of the Colorado River Indian Tribe (herein CRIT), appeals his conviction and fine for simple assault imposed by the United States Magistrate Judge and affirmed by the district court. This case presents a question of first impression in this circuit. Patch argues that the Michael Schwab, the assault victim and a La Paz County deputy sheriff, was trespassing on the porch of a private home within the CRIT reservation when Patch pushed him. The government contends that the county officer was properly executing his official duty when Patch tried to push him off the porch. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the judgment.

**FACTS**

We begin with certain agreed facts: All material acts, including the alleged traffic violation, took place in Indian country.[1] Deputy Schwab and Detention Officer Miguel Quinones were patrolling State Highway 95 in a marked sheriff's department car when Patch first came to their attention. Patch was driving a pickup truck with California plates. Patch approached the sheriff's car from the rear in a manner which Schwab considered "tailgating." Schwab pulled over to let Patch pass, then activated his signal lights and pursued Patch, intending to stop the pickup truck.

During the pursuit, Schwab transmitted a radio message that he was following a traffic violator who "may be" a tribal member. Under county procedures, once Schwab knew that Patch was a tribal member, he was supposed to notify the tribal police that a tribal member was a suspected traffic violator within tribal jurisdiction. Schwab later swore in court that he did not know that Patch was a tribal member until after the charged assault was committed. He said he intended to pursue the truck and find out whether the driver was a tribal member, whom Schwab had no authority to arrest, or

---

1. "The term 'Indian country'... means (a) all lands within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." 18 U.S.C.A. § 1151.

a nonmember, whom he could arrest for traffic violations on a state highway.

In fact, Patch was an enrolled member of the CRIT. Further, having once been a tribal judge, Patch possessed just enough knowledge to set up this litigation. Patch testified that he "knew" that the county officer had no authority to stop him on the highway, or anywhere else in Indian country, because he was a tribal member. Accordingly, Patch did not stop, but instead proceeded through the town of Parker, a municipal corporation entirely within the reservation, to the driveway of his sister's house. The sheriff's car followed right behind him.

Patch parked and went up some steps to the porch. Deputy Schwab pursued Patch onto the porch, where Patch told him to "get the hell off my property." Schwab then attempted to detain Patch by grabbing his arm, but Patch pushed Schwab free and went into the house. Patch later returned to the porch where the febrile dialogue continued and turned physical. In the end, two county officers subdued Patch and turned him over to tribal police, who by then were on the scene.

The United States attorney charged this push as an assault, pursuant to 18 U.S.C. § 113(a)(5). The resulting trial before a magistrate judge in district court produced a $150 fine.

**ANALYSIS**

The district court concluded that Patch's push was an unlawful touching that satisfied the minimum requirements of a simple assault under § 113(a)(5). The court reasoned that Schwab did not know that Patch was a tribal member and that Schwab had the authority to stop Patch to determine whether he was a tribal member. We review each finding in turn.

1.  Did Schwab know that Patch was a tribal member?

Patch argues that the court erred when it found that Deputy Schwab, the assault "victim," did not know that Patch was a tribal member before he attempted to arrest him. The evidence on this point was hotly contested. The magistrate judge found, however,

that Schwab did not know until after all the material facts had occurred that Patch was a member of the tribe. The district court left this finding undisturbed. The trial court record reveals no reason to hold that finding to be clearly erroneous. It is therefore accepted as a fact. *See* Fed.R.Crim.P. 23(c); *United States v. VonWillie*, 59 F.3d 922, 925 (9th Cir.1995).

2.  Did Schwab have the authority to stop Patch to determine whether he was a tribal member?

Patch's conviction for assault rests on conclusion of the district court that Schwab was acting within his official duties when he grabbed Patch by the arm on the porch. If he was not, then Patch could have required Schwab to leave and could have used reasonable force to remove him as a trespasser. In finding that Schwab acted within his duties, the court reasoned that Schwab had authority (1) to stop suspects in Indian Country to determine his jurisdiction; and (2) to pursue suspects from Arizona State Highway 95 to a private porch in Indian country.

1.  Authority to stop suspects to determine jurisdiction

■ The section of Arizona State Highway 95 at issue here crosses the CRIT reservation and is subject to overlapping jurisdiction. Offenses committed in Indian country can be subject to federal, state, or tribal jurisdiction depending on the severity of the crime and on whether the offender and/or victim are tribal members. *Duro v. Reina*, 495 U.S. 676, 680 n. 1, 110 S.Ct. 2053, 2056–57, 109 L.Ed.2d 693 (1990). On this section of road, Arizona police have authority to arrest non-Indians for traffic violations, *See United States v. McBratney*, 104 U.S. 621, 624, 26 L.Ed. 869 (1881); *Draper v. United States*, 164 U.S. 240, 247, 17 S.Ct. 107, 41 L.Ed. 419 (1896), but they do not have authority to arrest tribal members. *See Application of Denetclaw*, 83 Ariz. 299, 320 P.2d 697, 701 (1958).

As a practical matter, without a stop and inquiry, it is impossible for an Arizona officer

to tell who is operating an offending vehicle.[2] In this case, Schwab did not know who was driving the pickup truck. The question therefore is whether Schwab had the authority to stop offending vehicles to determine whether he had authority to arrest.

■ In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that, consistent with the Fourth Amendment, a police officer could stop a suspect to investigate suspicious circumstances. *Id.,* at 22–29, 88 S.Ct. at 1880–84. Under the logic of *Terry,* law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity. *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 678, 83 L.Ed.2d 604 (1985); *United States v. Brignoni–Ponce,* 422 U.S. 873, 880, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). Also, a police officer may make brief stops of suspicious individuals in order to determine their identity or to obtain more information. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

We hold that the attempted stop in this case was valid as a logical application of *Terry.* Here, Schwab needed to make only a brief stop to ascertain Patch's identity. Such a stop would be a brief, limited detention to ask one question. Like the stop in *Terry,* its purpose would further a legitimate law enforcement objective: to determine whether the suspect was a tribal member. Schwab had the authority under *Terry* to stop vehicles on State Highway 95 to determine his jurisdiction to issue a citation. *Cf. State v. Schmuck,* 121 Wash.2d 373, 382–83, 850 P.2d 1332, 1337 (1993) (tribal officer may stop a speeding vehicle to see if driver is a tribal member.).

The district court correctly held that Schwab had "reasonable suspicion to detain a motorist." *United States v. Rodriguez,* 976 F.2d 592, 594 (9th Cir.1992), *amended,* 997 F.2d 1306 (9th Cir.1993). "Reasonable suspicion" must include "specific, articulable facts" which show "criminal activity." *Id.* Here, Schwab observed Patch's reckless driving which satisfied the "criminal activity" requirement. He unquestionably could have stopped the suspect if he knew the suspect was not a tribal member. He did not know that the suspect was a tribal member, and until he could stop the suspect and ask about tribal membership, the officer could not know whether he had jurisdiction to proceed.[3] Accordingly, we turn to the pursuit.

2. Authority to pursue Patch to a private porch in Indian country

■ Under the doctrine of hot pursuit, a police officer who observes a traffic violation within his jurisdiction to arrest may pursue the offender into Indian country to make the arrest. *See State of Arizona v. Lupe,* 181 Ariz. 211, 889 P.2d 4, 7 (App.1994). *Cf. Brown v. Burns,* 996 F.2d 219, 220 (9th Cir.1993). Here, Schwab observed Patch tailgating on State Highway 95. Arizona State Highway 95 was within his jurisdiction to arrest, and the tailgating gave him probable cause to arrest. Under the hot pursuit doctrine, Schwab was justified in following Patch to a place where he could effect a stop, in this case the private porch of a residence in Indian country.

We note that this dispute is not controlled by *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), where state officers in pursuit of a traffic violator entered the suspect's house, and the entry was held to violate the Fourth Amendment. Here, the pursuit, and ensuing altercation, took place on the porch, a "public" place for Fourth Amendment purposes under *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).[4]

2. In some Arizona counties, state and Indian police departments have cross-deputizing agreement which permit officers of both jurisdictions to enforce traffic laws on state highways crossing tribal lands. La Paz county and the CRIT, however, did not have such an agreement.

3. Patch argues that once it became known that he was a tribal member, the officer's act became retroactively wrongful and turned him into a trespasser. To state that proposition is to refute it.

4. We recognize that this pursuit did not start outside of Indian country. That, however, did not diminish the officer's right to continue his otherwise valid attempt to question Patch.

## CONCLUSION

The district court held that Schwab was performing his official duties and was lawfully on the porch to attempt to learn, if he could, whether Patch was a tribal member immune from arrest by state officers in Indian country or a nonmember subject to detention long enough to receive a traffic citation. Schwab was not a trespasser. We agree with the district court.

Other points were briefed by the parties, but none requires discussion at this time.

AFFIRMED