2008-NMCA-107

190 P.3d 1146

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David HARRISON, Defendant–Appellant.**

**No. 27,224.**

Court of Appeals of New Mexico.

June 24, 2008.

Certiorari Granted, No. 31,224,
Aug. 6, 2008.

Gary K. King, Attorney General, Andrew S. Montgomery, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, J.K. Theodosia Johnson, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} A jury found Defendant guilty of driving while intoxicated. NMSA 1978, § 66–8–102 (2007). After determining that this was at least Defendant's seventh DWI conviction, the district court filed its judgment, sentence, and commitment to the Corrections Department imposing a third-degree felony sentence of three years, to be followed by a two-year period of parole, together with additional conditions. Section 66–8–102(J) (stating that upon a seventh or subsequent conviction, an offender is guilty of a third-degree felony and shall be sentenced to a term of imprisonment of three years). Defendant appeals, arguing that the evidence of his performance on field sobriety tests should have been suppressed because they were administered by a state police officer who is not cross-commissioned with the Bureau of Indian Affairs (BIA) or the Navajo Nation, Defendant is Navajo, and the tests were administered following a stop on the Navajo Nation. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} On a Wednesday morning in August 2005, at approximately 10:30 in the morning, San Juan County Deputy Emerson Charley was patrolling County Road 6675 headed west up to the Navajo Reservation boundary. He stopped before the bridge, which marks the boundary between San Juan County and the Navajo Reservation, turned around, and proceeded eastbound, monitoring the westbound traffic. Approximately one hundred yards from the bridge, he noticed a blue pickup truck driven by Defendant traveling westbound at a high rate of speed, and with his radar, determined that Defendant was traveling fifty-six miles per hour in a thirty-five mile-per-hour zone. Officer Charley engaged his emergency lights, turned around, and began following Defendant. Defendant did not yield, and continued toward the bridge. Officer Charley changed the tone of his siren to gain Defendant's attention in case Defendant did not notice Officer Charley was following Defendant. Defendant still did not yield. While crossing the bridge, Defendant threw a bottle with yellow liquid out the passenger window. Defendant continued traveling and ultimately pulled to the side of the road approximately one-third of a mile inside the Reservation boundary.

{3} Officer Charley approached the vehicle and noticed that Defendant had bloodshot, watery eyes and smelled of alcohol. Officer Charley told Defendant that he was stopped for speeding and asked Defendant what he had thrown out of the window while crossing the bridge. Defendant responded that it was a Budweiser. Defendant stepped out of the vehicle and performed field sobriety tests. Asked if Defendant agreed to perform the tests, Officer Charley answered, "Yes, he did."

{4} First, Officer Charley administered a horizontal gaze nystagmus test, and he observed DWI clues consisting of a lack of smooth pursuit in both eyes and nystagmus at full deviation in both eyes. In the "walk and turn" test, DWI clues were that Defendant miscounted and used his arms to balance. In the "one-legged stand" test, DWI clues were that Defendant miscounted and dropped his foot multiple times. Finally, Officer Charley advised Defendant about a portable breath test, and Defendant agreed to take the test. This test registered a .218 breath alcohol concentration.

{5} Based on Defendant's performance on the field sobriety tests and the portable breath test result, Officer Charley concluded that Defendant was impaired and driving while intoxicated. However, at some point during the stop, Officer Charley learned that Defendant is Navajo. The record is not clear about when Officer Charley obtained this information, but we assume Officer Charley

obtained this information either before or while he was in the process of administering the field sobriety tests. Officer Charley notified his dispatch to contact the Shiprock Police Department and send a unit for a DWI because Defendant is Navajo and they were on the Navajo Reservation. As a non-reservation police officer, Officer Charley knew he had no authority to arrest Defendant. Officer Charley was informed that the Shiprock Police Department did not have any available units. Recognizing that he could not arrest Defendant, Officer Charley testified, "[T]he only thing I could do was have him try to find a ride. He attempted to make a phone call, wasn't able to find somebody, and he decided he was going to walk back to some family's residence."

{6} Officer Charley subsequently secured an arrest warrant that was executed in compliance with Navajo requirements, and a criminal complaint was ultimately filed in the district court charging Defendant with one count of driving under the influence of intoxicating liquor and/or drugs (fourth or subsequent offense). At trial, Officer Charley testified about Defendant's performance on the "walk and turn" test and the "one-legged stand" test, but not about the horizontal gaze nystagmus test or the portable breath test result. The jury found Defendant guilty, and Defendant appeals.

**DISCUSSION**

{7} Defendant raises a single issue on appeal: Whether a state officer, who is not cross-commissioned with the Bureau of Indian Affairs (BIA) or the tribe, may pursue an Indian onto the reservation, across jurisdictional lines, for a minor traffic offense and whether, after determining the officer lacks jurisdiction, the officer may continue to detain the Indian and collect evidence for use against him.

{8} We first address whether Officer Charley had authority to stop Defendant on the reservation, where Officer Charley had no authority to arrest Defendant. *See Benally v. Marcum,* 89 N.M. 463, 465–66, 553 P.2d 1270, 1272–73 (1976) (holding that the defendant's arrest within the reservation by city police officers was illegal because it violated the tribe's sovereignty by circumvent-

ing the procedure for extradition from the reservation); *City of Farmington v. Benally,* 119 N.M. 496, 498, 892 P.2d 629, 631 (Ct.App. 1995) (holding that the defendant's arrest on the reservation, in violation of extradition procedures was illegal); *State v. Yazzie,* 108 N.M. 677, 678, 777 P.2d 916, 917 (Ct.App. 1989) (holding that the defendant's arrest on the reservation without assistance of tribal officers and without utilizing extradition procedures was illegal).

{9} Upon observing Defendant's truck exceeding the speed limit by twenty-one miles per hour, in San Juan County off the Navajo Reservation, Officer Charley had probable cause to stop Defendant, and he attempted to do so. However, Defendant did not stop and proceeded onto the Navajo Reservation, where he did eventually stop. Until Defendant stopped, Officer Charley did not know that Defendant was a member of the Navajo Nation. Under the circumstances of this case, we conclude that Officer Charley had authority to stop Defendant on the Navajo Reservation, not only to investigate the traffic offense he had just observed off the Navajo Reservation but also to determine if he had authority to arrest Defendant.

{10} We find the reasoning of *United States v. Patch,* 114 F.3d 131 (9th Cir.1997) persuasive. In *Patch,* a county deputy sheriff was patrolling a state highway on Indian land in a marked police unit. *Id.* at 132. He had no authority to arrest a tribal member, but he did have authority to arrest a nonmember for traffic violations on the state highway. *Id.* at 132–33. A pickup truck with state license plates approached from the rear in a manner which the officer considered to be "tailgating." *Id.* at 132. After pulling over and letting the truck pass, the officer activated his signal lights and pursued the truck, intending to stop it and find out whether the driver was a tribal member or a nonmember. *Id.* at 132–33. The court first stated that as a practical matter, without a stop and inquiry, it would be impossible for the deputy to tell who was operating the vehicle. *Id.* at 133–34. The question therefore was "whether [the deputy] had the authority to stop offending vehicles to deter-

mine whether he had authority to arrest." *Id.* at 134. The court noted that under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), law enforcement officers may briefly stop a moving vehicle to investigate a reasonable suspicion that its occupants are involved in criminal activity, and concluded that the stop before it was a logical application of *Terry. Patch,* 114 F.3d at 134. The deputy observed the driver's reckless driving, which satisfied the "criminal activity" requirement of *Terry,* and he had the unquestioned right to make the stop if he knew the suspect was not a tribal member. *Patch,* 114 F.3d at 134.

> Here, [the deputy] needed to make only a brief stop to ascertain [the driver's] identity. Such a stop would be a brief, limited detention to ask one question. Like the stop in *Terry,* its purpose would further a legitimate law enforcement objective: to determine whether the suspect was a tribal member. [The deputy] had the authority under *Terry* to stop vehicles on [the highway] to determine his jurisdiction to issue a citation.

*Patch,* 114 F.3d at 134.

{11} In the converse factual scenario, the Supreme Court of Washington held that an Indian tribal officer had authority to stop a speeding vehicle on the reservation to investigate a possible violation of the tribal traffic code and to determine if the driver was an Indian, subject to the tribal code's jurisdiction. *State v. Schmuck,* 121 Wash.2d 373, 850 P.2d 1332, 1337 (1993) (en banc). We therefore decline Defendant's invitation to follow *State v. Cummings,* 679 N.W.2d 484 (S.D.2004), and *State v. Spotted Horse,* 462 N.W.2d 463 (S.D.1990), to the extent that they are contrary to the reasoning of *Patch* and *Schmuck.* It is well established that a state police officer has the authority and jurisdiction to arrest a person who is not a tribal member on a reservation. *State v. Warner,* 71 N.M. 418, 421–22, 379 P.2d 66, 68–69 (1963). We therefore hold that Officer Charley had authority to stop Defendant on the Navajo Reservation to investigate the traffic offense he observed off the Navajo Reservation and to determine if Defendant was a member of the Navajo Nation.

{12} Immediately upon approaching the vehicle, Officer Charley noted that Defendant had bloodshot, watery eyes and smelled of alcohol. Further, Defendant admitted to throwing a Budweiser out of his vehicle while crossing the bridge, and Officer Charley had observed Defendant driving twenty-one miles per hour over the speed limit. Defendant agreed to perform field sobriety tests. Defendant argues that even if Officer Charley had authority to make the stop on the Navajo Reservation, once he determined that Defendant was Navajo, his continued detention of Defendant to perform the field sobriety tests violated the Fourth Amendment. We reject Defendant's argument because it fails to recognize that a person can voluntarily take the field sobriety tests and because the issue of whether Defendant consented to the tests was not squarely litigated below, though there was evidence pursuant to which the district court could have found that he did so consent.

{13} We have already determined that Officer Charley had the authority to stop Defendant. As a result, "only the reasonableness of the detention need be examined." *State v. Ryder,* 98 N.M. 453, 455, 649 P.2d 756, 758 (Ct.App.1982), *aff'd,* 98 N.M. 316, 648 P.2d 774. "Consent is an exception to the Fourth Amendment probable cause and reasonable suspicion requirements that police often rely on to investigate suspected criminal activity." *State v. Ryon,* 2005–NMSC–005, ¶ 20, 137 N.M. 174, 108 P.3d 1032. In New Mexico, there is no implied consent law by which a driver consents to taking field sobriety tests. *See State v. Wright,* 116 N.M. 832, 835, 867 P.2d 1214, 1217 (Ct.App.1993) (noting that there is no New Mexico law implying consent to taking field sobriety tests). Therefore, a driver may refuse to perform field sobriety tests, although the refusal is admissible into evidence. *Id.* at 835–36, 867 P.2d at 1217–18; *see State v. Sanchez,* 2001–NMCA–109, ¶ 9, 131 N.M. 355, 36 P.3d 446 ("The [s]tate can use evidence of a driver's refusal to consent to the field sobriety testing to create an inference of the driver's consciousness of guilt."). In this regard, simply because a police officer requests a driver to perform

field sobriety tests in the context of a traffic stop does not automatically transform the request into a demand that precludes, as a matter of law, a finding of a valid consent. We agree with *People v. Walter*, 374 Ill. App.3d 763, 313 Ill.Dec. 344, 872 N.E.2d 104, 113 (2007) when it states:

> A request to submit to a field sobriety test, without more, is still a request, and whether submission to the particular request at issue amounts to a seizure may very well depend on the many possible circumstances surrounding the request as well as the nature of the request itself. As such, despite [case law from other jurisdictions], we are not prepared to say ourselves that submission to an officer's request to submit to a field sobriety test per se converts an encounter into a fourth amendment seizure or search. Nor are we prepared to say that submission to a request, rather than to an order, to take a field sobriety test cannot constitute consent to the possible search the test might entail.

*Id.*

■ {14} In this case, Officer Charley was specifically asked whether Defendant agreed to perform the field sobriety tests, and Officer Charley answered, "Yes, he did." Defendant did not challenge this testimony in the district court, and he makes no argument to us that his consent was not voluntary. We therefore conclude that Defendant voluntarily performed the field sobriety tests. *See State v. Ramos*, 149 Or.App. 269, 942 P.2d 841, 842–43 (1997) (concluding that the defendant's consent to perform field sobriety tests was voluntary, where officer asked driver if he would mind performing tests, driver said he did not mind, and driver did not indicate in his testimony that he felt coerced in any way). Under these circumstances we hold that Defendant's jurisdictional claim is moot. *See State v. McCormack*, 117 Idaho 1009, 793 P.2d 682, 682–83 (1990) (concluding that the suppression issues related to breath alcohol tests were moot because the defendants voluntarily submitted to the breath alcohol tests following their arrest within an Indian reservation by a state police officer).

{15} We conclude this opinion by noting that Officer Charley scrupulously respected Navajo Nation sovereignty. Officer Charley recognized the limits of his authority and did not arrest Defendant. After concluding that Defendant was driving while intoxicated, Officer Charley was faced with a predicament because he recognized he had no authority to arrest Defendant and because no Navajo police officers were available. Rather than allowing a suspected drunk driver to get back into his vehicle and possibly injure or kill people, Officer Charley allowed Defendant the opportunity to try getting someone else to give him a ride. Learning that no ride was available, Officer Charley allowed Defendant to leave the scene walking. There was no injury to the sovereignty of the Navajo Nation.

**CONCLUSION**

{16} The judgment and sentence of the district court is affirmed.

{17} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.