This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                **NO. 29,647**

**JASON P. CHAVEZ,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr. , District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nancy Hewitt, Appellate Defender
Santa Fe, NM

Scott M. Davidson
Albuquerque, NM

Trace L. Rabern
Santa Fe, NM

Brian Close, UNM Practicing Law Student

Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant challenges the denial of a motion to suppress. We issued a notice of proposed summary disposition, proposing to uphold the district court's determination. Defendant has filed a memorandum in opposition, which we have duly considered. Because we remain unpersuaded by the assertions of error, we affirm.

We briefly reiterate the underlying facts as follows, incorporating additional information supplied in the memorandum in opposition. Deputy Herrera initiated a traffic stop after observing that the registration on Defendant's vehicle had expired. [MIO 4] After observing that Defendant's eyes were bloodshot and watery, Deputy Herrera questioned Defendant about alcohol consumption [MIO 4] and administered an HGN test. [MIO 5] Although Defendant did not display the classic signs of impairment, his pupils failed to react normally to the flashlight. [MIO 5] Deputy Herrera explained that in his experience, this is consistent with the use of narcotics. [MIO 5] He therefore asked Defendant whether he had taken drugs, and Defendant admitted that he had used methamphetamine earlier that day. [MIO 5] At that juncture, Deputy Herrera obtained Defendant's permission to search both his person

and the vehicle. [MIO 5] In the course of the search of the vehicle, Deputy Herrera found methamphetamine. [MIO 5; DS 1, 3]

Defendant has acknowledged that the initial stop was justified. [RP 51] *See State v. Duran*, 2005-NMSC-034, ¶¶ 3, 24, 138 N.M. 414, 120 P.3d 836 (observing that an initial stop was justified when the officer could not determine whether an apparently temporary vehicle registration had expired); *State v. Lowe*, 2004-NMCA-054, ¶ 11, 135 N.M. 520, 90 P.3d 539 (observing that an officer lawfully stopped the defendant for an outdated registration tag). However, Defendant disputes the validity of his continuing detention after the issue of the vehicle registration had been addressed. [MIO 2-3]

"An officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer unjustifiably expands the scope of the detention or, without a valid factual basis, makes inquiries about other criminal activity unrelated to the traffic violation." *State v. Funderburg*, 2008-NMSC-026, ¶ 14, 144 N.M. 37, 183 P.3d 922. Questions about alcohol and drugs are "a separate and distinct line of questioning apart from and outside the scope of the initial justification for the stop," which must be supported by "a showing of reasonable suspicion" of criminal activity other than that which gave rise to the initial stop. *Duran*, 2005-NMSC-034, ¶ 41. Accordingly, if evidence of drugs and alcohol becomes

apparent in the course of a traffic stop, giving rise to a reasonable suspicion of drug or alcohol related criminal activity, the officer may expand the scope of the investigation to address those subjects. *See State v. Taylor*, 1999-NMCA-022, ¶ 22, 126 N.M. 569, 973 P.2d 246 (filed 1998) (observing that the subjects of drugs and alcohol could come within the scope of an investigation if evidence of drugs and alcohol becomes apparent to the investigating officer); *Funderburg*, 2008-NMSC-026, ¶ 24 ("[R]easonable suspicion can arise out of the evolving circumstances surrounding a traffic stop and may be based upon reasonable inferences drawn from those circumstances."); *State v. Williamson*, 2000-NMCA-068, ¶ 8, 129 N.M. 387, 9 P.3d 70 ("[W]hen an officer investigating a traffic violation has a reasonable and articulable suspicion that the driver is impaired, the officer may detain the driver to investigate the officer's suspicions.").

As previously mentioned, Deputy Herrera only questioned Defendant about alcohol after observing Defendant's physical condition. [MIO 4] Deputy Herrera explained that in his experience, Defendant's bloodshot, watery eyes suggested that he was under the influence of drugs or alcohol. [RP 23]

In his memorandum in opposition, we understand Defendant to challenge the sufficiency of the officer's observations to support the expansion of the inquiry into the subject of alcohol-related impairment. [MIO 8-13] However, we have previously

4

held that officers engaged in traffic stops may expand their investigations into alcohol-related inquiries when presented with similarly suggestive physical evidence. *See Williamson*, 2000-NMCA-068, ¶¶ 2, 9 (holding that a traffic stop was validly expanded to incorporate a DWI investigation when the officer detected an odor of alcohol and noticed that the driver had bloodshot, watery eyes). The fact that Defendant's appearance might have been explained by other factors [MIO 10] does not, in our opinion, render the alcohol-related questioning impermissible. Nor do we find the various out-of-state authorities cited in the memorandum in opposition to be persuasive. [MIO 11-13] Given "the exigency of the possible threat to public safety that a drunk driver poses, [and] New Mexico's grave concern about the dangers of drunk drivers," as well as the minimal intrusion of the inquiry, we conclude that Deputy Herrera had a sufficient basis to inquire about alcohol. *See State v. Contreras*, 2003-NMCA-129, ¶ 21, 134 N.M. 503, 79 P.3d 1111.

To the extent that Defendant takes issue with the administration of the HGN test, we find no indication that Defendant specifically raised this argument in the district court. Nor does Defendant advance any argument on appeal that his compliance with the testing was involuntary. We therefore presume that Defendant voluntarily performed the field sobriety test and reject any challenge that Defendant may be advancing on that basis. *See State v. Harrison*, 2008-NMCA-107, ¶ 14, 144

5

N.M. 651, 190 P.3d 1146 (arriving at a similar conclusion under analogous circumstances), *cert. granted*, 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267.

Defendant further argues that the alcohol-related inquiry should be regarded as impermissible when evaluated in light of the heightened protections afforded by the New Mexico Constitution. [MIO 13-18] Contrary to Defendant's assertion, however, [MIO 6, 13] we find no indication that this argument was advanced below. *See State v. Gomez*, 1997-NMSC-006, ¶¶ 22-23, 122 N.M. 777, 932 P.2d 1 (describing the preservation requirements associated with claims that the New Mexico Constitution affords greater protection than its federal counterpart). Defendant's isolated and undeveloped reference to "New Mexico law" [RP 51] is insufficient to preserve an argument of this nature. Moreover, insofar as Defendant has cited no authority that could be regarded as factually on-point and has provided no explanation why the investigative detention should be analyzed differently under the New Mexico Constitution, we are not persuaded that the matter is before us. *See State v. Maez*, 2009-NMCA-108, ¶¶ 11-15, 147 N.M. 91, 217 P.3d 104 (arriving at a similar conclusions under analogous circumstances).

Next, Defendant argues that the investigation should have come to an immediate conclusion after he satisfactorily performed the HGN test and that the officer's ensuing questioning about drugs was impermissible. [MIO 18-22] *See*

6

*Duran*, 2005-NMSC-034, ¶ 35 (observing that "all questions asked by police officers during a traffic stop must be analyzed to ensure they are reasonably related to the initial justification . . . or are supported by reasonable suspicion" that may unfold during the investigation or traffic stop). "An officer's continued detention of a suspect may be reasonable if the detention represents a graduated response to the evolving circumstances of the situation." *Funderburg*, 2008-NMSC-026, ¶ 16. As previously mentioned, although the HGN test did not reveal the classic signs of impairment, Defendant's pupils failed to react normally to the flashlight. [MIO 5] Below, Deputy Herrera explained that in his experience, this result is consistent with the use of narcotics. [MIO 5] We conclude that this observation provides an adequate basis for the questions about Defendant's consumption of drugs. *See id.* ¶ 15 (observing that "reasonable suspicion is a commonsense, nontechnical conception[], which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act" (alteration in original) (internal quotation marks and citation omitted)).

In his memorandum in opposition, Defendant contends that Deputy Herrera's observations about the lack of light-sensitivity of his eyes should not be regarded as a viable basis for inquiring about drugs because the State failed to demonstrate that Deputy Herrera was qualified to render an opinion on this subject. [MIO 20] However,

7

we find no indication that Defendant advanced any argument of this nature below. As a result, we consider it to be unpreserved. *See State v. Sosa*, 2008-NMCA-134, ¶ 26, 145 N.M. 68, 193 P.3d 955 (considering a challenge to be unpreserved when no objection was made to the witness' qualifications to testify about general matters concerning drugs), *rev'd on other grounds by* 2009-NMSC-056, ___ N.M. ___, ___ P.3d ___.

Defendant also argues that the validity of the continuing detention and drug-related inquiry after the administration of the HGN test should be deemed impermissible in light of heightened protections afforded by the New Mexico Constitution. [MIO 22-23] Once again, however, Defendant's argument was not preserved below. As a result, we decline to consider it.

Next, Defendant argues that his admission that he had consumed drugs some five hours earlier should not be regarded as sufficient grounds for further inquiry or investigation. [MIO 23-24] However, we find no indication that the scope of the investigation was expanded or the length of the detention was extended after Defendant made the admission. Deputy Herrera appears to have simply requested and obtained permission to search. [MIO 5] Nothing further was required to support such a request. *See State v. Bolton*, 111 N.M. 28, 42, 801 P.2d 98, 112 (Ct. App. 1990) (holding that "a momentary extension . . . of a previously lawful detention for the

purpose of requesting permission to search is constitutionally permissible").

This brings us to Defendant's fourth and final argument, by which he contends that his consent was tainted, rendering the searches of his person and vehicle impermissible. [MIO 24-26]

As we observed in the notice of proposed summary disposition, Defendant's consent was untainted if the initial stop and subsequent questioning were permissible. *See Duran*, 2005-NMSC-034, ¶ 42 (holding that consent to search was valid because neither the initial stop nor the ensuing questioning was improper). For the reasons previously stated, we conclude that the initial stop was justified and the subsequent questioning about alcohol and drugs were permissible. As a result, Defendant's consent was untainted. *See Funderburg*, 2008-NMSC-026, ¶ 25 ("Because the questions about drugs did not impermissibly expand the scope of the stop . . . the driver's consent to search the vehicle was valid."). Insofar as Defendant's consent was not the fruit of an illegality, the motion to suppress was properly denied.

For the reasons stated, we affirm.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**