745 P.2d 172

**STATE of Arizona, Appellant,**

v.

**Bruce NAHEE, Appellee.**

**No. 1 CA–CR 10169.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 20, 1987.

Review Denied Dec. 1, 1987.

Charles R. Hastings, Yavapai Co. Atty. by Ethan A. Wolfinger, Deputy Co. Atty., Prescott, for appellant.

Joyce & Frankel, P.A. by Lewis S. Levin, Sedona, for appellee.

## OPINION

JACOBSON, Presiding Judge.

In this case involving the tension between state and Indian tribal jurisdiction, we must determine whether the mistakes of the tribal authorities are visited upon the state prosecution in the form of the invocation of the exclusionary rule.

During the evening of March 22, 1985, or the early morning of March 23, 1985, someone broke into the Clarkdale Police Department, in Clarkdale, Arizona, and opened evidence lockers, destroyed items of evidence, opened desk drawers and file cabinets and strewed their contents about, smashed beer bottles which left a sticky residue throughout the department, removed firearms and vandalized automobile patrol units. Blood smears and palm prints were found on the vandalized patrol units. The investigation of this break-in produced physical evidence including shoeprints imprinted in the beer residue, blood samples and latent fingerprints and palm prints.

In mid-April, 1985, Bruce Nahee, a member of the Yavapai Apache Tribe residing on the Yavapai Indian Reservation, near Clarkdale was implicated in an unrelated residential burglary occurring in Clarkdale and the police obtained a warrant for his arrest. There is no contention that probable cause did not exist for the obtaining of this warrant.

The Clarkdale police contacted Manuel Sabori, a commissioned police officer employed by the Bureau of Indian Affairs who worked on the Yavapai Indian Reservation, to assist the Clarkdale authorities with the arrest of Nahee. Officer Sabori advised the local authorities that it was necessary to obtain an arrest warrant from the tribal court. A warrant for Nahee's arrest was then obtained from the tribal court.

Armed with this tribal warrant, Officer Sabori arrested Nahee on the reservation on April 16, 1985. Officer Sabori then placed Nahee in a Bureau of Indian Affairs vehicle and physically transported Nahee to the Clarkdale Police Department where he was turned over to Clarkdale police authorities. Unbeknownst to either Officer Sabori or the Clarkdale police, § 6.35 of the Yavapai Indian Apache Tribal Code required, in addition to the obtaining of a tribal warrant based upon a non-reservation crime:

> The tribal warrant will be served by a duly commissioned reservation police officer and the person arrested on the tribal warrant *will be returned to the Tribal Court for release to off-reservation authorities.*

(Emphasis added).

During the questioning of Nahee at the Clarkdale Police Department, the similarity between the soles of Nahee's shoes and the imprints left in the beer residue following the break-in of the Police Department was noticed. Subsequent comparison confirmed that Nahee's shoes made the imprint. Also, Nahee's fingerprints and palm prints matched those found at the Police Department following the illegal entry. A sample of Nahee's blood also matched that found at the scene of the crime.

Based upon this physical evidence, Nahee was indicted with four felony offenses related to the Clarkdale Police Department break-in and vandalism. Nahee moved to dismiss this prosecution contending that because of the violation of § 6.35 of the Tribal Code, the State of Arizona failed to obtain jurisdiction over him. This motion was granted by Judge James Sult, Yavapai County Superior Court.[1] No appeal by the State was taken from that order. However, Nahee subsequently stipulated to the State's obtaining jurisdiction over him and the charges were reinstated.

Following reinstatement, Nahee moved to suppress the finger and palm prints, the shoe print and the blood comparison evidence on the grounds that, based upon Judge Sult's order, this evidence was obtained as the result of an illegal arrest and therefore was inadmissible. Judge Richard Anderson, another Yavapai County Superior Court judge, granted the motion to suppress. The State, pursuant to A.R.S. § 13–4032(7), dismissed the charges against Nahee without prejudice, and commenced this appeal.

■ Before discussing the legal issue presented by this factual picture, two points need to be made. First, there is no contention, other than the § 6.35 tribal code violation, that any constitutional or statutory obstacle stands in the way of the admission of the physical evidence in this case. Second, because the State failed to appeal Judge Sult's order finding that the State of Arizona lacked jurisdiction as the result of Officer Sabori's actions on April 16, 1985, this ruling is the law of the case and binding on the State in this appeal.[2]

---

1. Judge Sult specifically reserved ruling on the admissibility of any evidence seized from Nahee.

2. In fact, Judge Sult's ruling was erroneous. Not only federal law but the law in this state is to the effect that defects in the compliance with extradition orders do not deprive the acquiring authorities of jurisdiction to prosecute. *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed.2d 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Weddell v. Meierhenry,* 636 F.2d 211 (8th Cir.1980), *cert. denied,* 451

■ With these principles in mind, we turn to the issue of whether the unknowing violation of a tribal regulation which has no constitutional implication by a non-state officer requires the suppression of evidence in a state court.

Nahee argues that the exclusionary rule, normally invoked for the violation of constitutional protections, should be invoked here to uphold the concept of tribal sovereignty, citing such cases as *Worcester v. Georgia*, 31 U.S. 515, 6 Pet. 515, 8 L.Ed. 483 (1832), *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), and *McClanahan v. Arizona Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). Whatever these cases may stand for in the long evolving concept of Indian/State relationships, they simply do not address the policy decisions concerning the exclusionary rule.

Generally, the rationale for the exclusionary rule is that by making the evidence obtained inadmissible, the police are not rewarded for violating a defendant's constitutional rights, and that such conduct will be deterred in the future. *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). In this regard, it is important to focus upon whose conduct is involved in determining what sanctions to impose. Here, the innocent mistake, albeit a mistake, was made, not by state law enforcement officials, but rather by the tribe's own designated agent. The state officials were completely innocent of a mistake in how Nahee's arrest was made. They enlisted the aid of the person they were required to contact. They obtained a tribal warrant and left the execution of that warrant to the tribe's duly authorized representative.

Once the Clarkdale Police obtained custody of Nahee, they followed established constitutional principles and statutory directives in obtaining the evidence. In this regard, the decision in *United States v. Lira*, 515 F.2d 68 (2nd Cir., 1975) *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed. 2d 69, is instructive. In *Lira*, United

States authorities sought the cooperation of the Chilean government in obtaining custody of a Chilean citizen wanted for crimes committed in the United States. The Chilean police arrested, tortured and then flew the accused back to the United States. The Second Circuit held:

Agencies such as the DEA presumably must cooperate with many foreign governments in seeking transfer to the United States of violators of United States law. The DEA can hardly be expected to monitor the conduct of representatives of each foreign government to assure that a request for extradition or expulsion is carried out in accordance with American constitutional standards. Moreover, no purpose would ·be served by holding the Government responsible for the actions of Chilean police. Our decision in *Toscanino* [*U.S. v. Toscanino*, 500 F.2d 267 (2d Cir., 1974)] was grounded on the same principle which underlay the Supreme Court's adoption of the exclusionary rule in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In both cases the purpose of the rule was to deter police misconduct by barring "the government from realizing directly the fruits of its own deliberate and unnecessary lawlessness in bringing the accused to trial," 500 F.2d at 272. Hopefully divestiture of jurisdiction over a defendant forcibly abducted by our Government from a foreign jurisdiction would inhibit our Government from engaging in similar unlawful conduct in the future. However, where the United States Government plays no direct or substantial role in the misconduct and the foreign police have acted not as United States agents but merely on behalf of their own government, the imposition of a penalty would only deter United States representatives from making a lawful request for the defendant and would not deter any illegal conduct. Since our Government has no control over the foreign

U.S. 941, 101 S.Ct. 2024, 68 L.Ed.2d 329 (1981); *Davis v. Muellor*, 643 F.2d 521 (8th Cir.), *cert. denied* 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d

206 (1981); *State v. Bost*, 2 Ariz.App. 431, 409 P.2d 590 (1966); *also see* Annot. 25 A.L.R. 4th 157 (1983) and cases cited therein.

police, extension of *Toscanino* to the present case would serve no purpose. *Id.* at 71.

There is no contention that when Officer Sabori executed the arrest warrant, he was acting in any capacity other than as an officer of the Tribe. Moreover, the only purpose of the return required by § 6.35 of the Tribal Code was to determine whether the person arrested was the person named in the warrant. Defendant has not suggested he was not the person named in the warrant. Accordingly, if Sabori had taken defendant back to the tribal court, the act the tribal court would have performed would have been ministerial only in releasing defendant to the Clarkdale police, who then would have discovered the evidence.

Thus, as was noted in *Boag v. State,* 21 Ariz.App. 404, 520 P.2d 317 (1974):

> We do not agree with petitioner's argument that an appropriate exclusionary rule ought to be fashioned if petitioner's extradition rights were violated * * * We cannot blindly and without precedent create exclusionary rules where the prejudice stemming from the alleged unlawful conduct is not self-evident.

Assuming then, that at the time the Clarkdale police obtained the evidence now sought to be suppressed they did not have "jurisdiction" over Nahee, we see nothing in that lack of "jurisdiction" which would require the invocation of an exclusionary rule.

Finally, the trial court specifically found that the Clarkdale police acted both objectively and subjectively in good faith in this matter. The State argued from this premise that the "good faith exception" embodied in A.R.S. § 13–3925(A)[3] is applicable here. We agree. In *State v. Brita,* 1 CA–CR 9670 (Ariz.App., Feb. 5, 1987) (*review granted,* Arizona Supreme Court, May 13, 1987) we considered the application of this statute where no violation of constitutional rights was involved in obtaining

the evidence, but an Arizona statutory violation was alleged. We held that under these circumstances, A.R.S. § 13–3925(A) was intended to apply and the evidence "should not be kept from the trier of fact where it was obtained in good faith."

As in *Brita,* no constitutional rights have been violated here. If A.R.S. § 13–3925(A) applies in the face of the statutory violation, we see no reason not to apply it when a tribal regulation has been violated.

We therefore hold that the trial court improperly suppressed the physical evidence in this case. The order granting the motion to suppress is set aside. This matter is remanded for further proceedings consistent with this opinion.

GREER and HAIRE, JJ., concur.

---

3. A.R.S. § 13–3925(A) states:

If a party in a criminal proceeding seeks to exclude evidence from the trier of fact because of the conduct of a peace officer in obtaining the evidence, the proponent of the

evidence may urge that the peace officer's conduct was taken in a reasonable, good faith belief that the conduct was proper and that the evidence discovered should not be kept from the trier of fact if otherwise admissible.