907 P.2d 74

**IRBY CONSTRUCTION COMPANY,**
**a Mississippi corporation,**
**Plaintiff–Appellee,**

v.

**ARIZONA DEPARTMENT OF REV-**
**ENUE, an agency of the State of**
**Arizona, Defendant–Appellant.**

**No. 1 CA–TX 94–0003.**

Court of Appeals of Arizona,
Division 1.

Oct. 24, 1995.

---

Grant Woods, Attorney General by William D. Hostetler, Assistant Attorney General and Michael P. Worley, Assistant Attorney General, Phoenix, for Defendant–Appellant.

Donald P. Roelke, Phoenix, and Fennemore Craig by Paul J. Mooney and Kendis K. Muscheid, Phoenix, for Plaintiff–Appellee.

## OPINION

KLEINSCHMIDT, Judge.

The Arizona Department of Revenue assessed Irby Construction Company transaction privilege taxes for the construction of several power transmission lines which Irby built during the period of 1985 through 1989. Irby paid the assessment under protest and, after exhausting its administrative remedies, filed a complaint in Arizona Tax Court to recover the taxes paid. The tax court found, based on a 1983 lawsuit between Irby and the Department, that the Department was collaterally estopped from taxing Irby. The Department appeals. We affirm.

### FACTS AND PROCEDURAL HISTORY

The facts are undisputed. Irby is in the business of constructing power transmission lines. Prior to 1983, it constructed several lines in Arizona. A dispute arose between Irby and the Department over Irby's tax liability arising out of the projects. Arizona Revised Statutes Annotated ("A.R.S.") sec-

tion 42–1309 [1] imposed a transaction privilege tax on those engaged in business in Arizona. The Department took the position that Irby was a contractor required to pay a transaction privilege tax for which no exemption existed. Irby insisted that it was engaged in retail sales and entitled to an exemption as provided for in the statutes. Arizona Revised Statutes section 42–1312 [2] set the tax rate and listed a number of exemptions to it:

A. The tax imposed by subsection A of § 42–1309 shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the business of *selling* any tangible personal property whatever *at retail*, but the tax shall not apply to the gross proceeds of sales or gross income from: [Listing exemptions not in issue here]. . . .

(Emphasis added.) Arizona Revised Statutes section 42–1312.01 [3] listed additional exemptions:

A. In addition to the exemptions prescribed by § 42–1312, the following categories shall also be exempt:

. . . .

4. Electric power production and transmission. Tangible personal property consisting of machinery, equipment or transmission lines used directly in the production or transmission of electrical power, but not including distribution and, in addition, transformers and control equipment used at transmission and substation sites.

Irby paid the disputed taxes under protest and sued the Department for a refund, claiming it was exempt under the foregoing proviso. In 1983, on cross-motions for summary judgment, the court ruled for Irby. The Department did not appeal this ruling.

Later, Irby constructed five separate electrical power transmission lines in various parts of Arizona. From May 1985 through March 1989, Irby filed returns with the De-

partment but excluded the income from, and paid no tax on, these five projects. It took the position that the income was exempt from taxation under A.R.S. section 42–1316 based on the ruling in the 1983 case.

In September 1989, disagreeing that Irby was entitled to the exemption, the Department assessed Irby $521,020.31, plus interest of $196,810.97 and a penalty of $54,141.52. Irby protested the assessment to a hearing officer and then to the Board of Tax Appeals. The hearing officer vacated the penalty, but both the hearing officer and the Board of Tax Appeals upheld the assessment and interest. Irby paid the assessment under protest and sued for a refund in the tax court.

At a trial upon stipulated facts, the tax court found, based upon the 1983 judgment, that the Department was collaterally estopped from relitigating Irby's exempt status. The Department now appeals, claiming that it is not collaterally estopped from relitigating this issue and that Irby is not exempt from payment of the tax under A.R.S. section 42–1316(A)(4). We agree with the tax court that the existence of the 1983 judgment collaterally estopped the Department from relitigating Irby's exempt status.

### COLLATERAL ESTOPPEL

Generally, the elements of collateral estoppel are: the issue was actually litigated in the previous proceeding; there was a full and fair opportunity to litigate the issue; resolution of the issue was essential to the decision; there was a valid and final decision on the merits; and there is common identity of the parties. *Chaney Bldg. Co. v. Tucson,* 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986); *Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987). Collateral estoppel may apply to tax cases. *Yavapai County v. Wilkinson,* 111 Ariz. 530, 532, 534 P.2d 735, 737 (1975).

Both parties had a full and fair opportunity to litigate this issue in the 1983 case. Irby

1. A.R.S. § 42–1309 was renumbered in 1985 as 42–1306.

2. A.R.S. § 42–1312 was renumbered in 1985 as 42–1315, but then subsequently repealed. See present § 42–1310.01 (1994).

3. A.R.S. § 42–1312.01 was renumbered in 1985 as 42–1316, but then subsequently repealed. See present § 42–1310.01 (1994).

and the Department were the litigants in the prior case and the judgment in that case was final and valid. The parties' main point of dispute over the applicability of collateral estoppel is whether the 1983 judgment exempting Irby necessarily determined whether Irby's activities were "retail sales" of power transmission lines, the same issue presented in the current case.

### THE BASIS FOR THE 1983 CASE

■ The Department asserts that it is not clear whether the 1983 judgment decided (1) that the exemption statute applied to retail sales and that Irby was a retail seller of power lines and therefore exempt; or (2) that the exemption statute applied to any transfer of power lines and Irby was therefore exempt, regardless of whether it was a retail seller. The judgment and minute entry offer no explanation of the ruling, but an examination of the parties' cross-motions for summary judgment clarifies the picture.

While Irby's argument was initially somewhat broad and unfocused, the entire matter evolved into an argument over whether or not Irby was a retail seller. The Department's response and cross-motion for summary judgment asserted that A.R.S. section 42–1312.01, as interpreted under *Arizona State Tax Comm'n v. Lawrence Mfg. Co.*, 15 Ariz.App. 486, 489 P.2d 860 (1971), exempted only retail sales of power transmission lines and that Irby was not a retail seller. Irby's response agreed that section 42–1312.01 only applied to retail sellers, but argued that it was a retail seller.

Both parties in the 1983 case cited *Lawrence* and agreed that the exemptions in section 42–1312.01 are limited to retail sales. The parties did not argue that Irby was exempt even if it was not engaged in retail sales because the exemption applied to *any* transfer of power lines. Irby also argued that the tax violated Equal Protection principles found in the Arizona and United States Constitutions, but this was clearly a secondary argument and, on appeal, the Department has not alleged that this could have been the basis for the ruling in the 1983 case. Thus, the trial court's ruling for Irby was necessarily based upon a finding that Irby was a retail seller of power transmission lines.

■ The Department also asserts that collateral estoppel is inapplicable because there has been a change in the exemption statute. We agree with the tax court that the change was merely "cosmetic." It added "retail sales" to the introduction of A.R.S. section 42–1316. This was a nonsubstantive change to the law:

> [The bill] proposes recodifying the state sales tax statutes and reorganizes and consolidates these statues [sic] but makes *no substantive changes* in the law. The result is statutes which are easier to use. The seven page amendment ... simply completes some of the technical changes.

(Emphasis added.) Consolidated Sales Tax: Hearing on S.B. 1038 Before the Senate Committee on Finance, 37th Legis., 1st Sess. (1985).

### THERE IS NO REASON TO APPLY AN EXCEPTION TO THE DOCTRINE OF COLLATERAL ESTOPPEL IN THIS CASE

■ The Department argues that, given the holding in *Brink Elec. Constr. Co. v. Arizona Dep't of Revenue*, 184 Ariz. 354, 909 P.2d 421 (App.1995), this case falls within an exception to the doctrine of collateral estoppel because the application of that doctrine will result in the unequal administration of the law upon other taxpayers who are engaged in the business of constructing transmission lines. In *Brink*, we held that a construction contractor who built two electrical substations was not engaged in retail sales within the meaning of the exemption statute, A.R.S. section 42–1310.01.[4] We reaffirm our holding in *Brink*, and we see no distinction between Irby's activities and those at issue in that case.

The Restatement (Second) of Judgments discusses the exception to the application of collateral estoppel upon which the Department relies:

4. A.R.S. § 42–1310.01 is the current recodification of §§ 42–1312 and –1312.02.

[A]lthough an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

. . . .

(2) The issue is one of law and . . . a new determination is warranted in order to . . . avoid inequitable administration of the laws; . . .

Restatement (Second) of Judgments § 28 (1982). The Restatement goes on to explain that,

[i]n determining whether . . . applying preclusion would result in inequitable administration of the law, it is important to recognize that two concepts of equality are in competition with each other. . . . [This] problem is illustrated by the situation where a taxpayer's liability for tax in a certain transaction in one tax year is determined according to a particular interpretation of the tax law, and that interpretation is thereafter abandoned in favor of another interpretation. If issue preclusion is applied in a subsequent tax year, the taxpayer will receive treatment different from that accorded to other taxpayers similarly situated at that time. On the other hand, refusing to apply issue preclusion invokes the second concept of equality. Thus, in the situation posed, if the taxpayer's liability in subsequent years is determined according to the new interpretation of the law, the taxpayer will be treated in those years in the same way as other taxpayers but in a way inconsistent with the determination previously made with respect to him. . . .

Restatement (Second) of Judgments § 28 cmt. c (1982).

The Restatement's exception is appropriate when "a judicial declaration *intervening* between the two proceedings . . . change[d] the legal atmosphere as to render the rule of collateral estoppel inapplicable." *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948) (emphasis added).

The *Brink* case was decided in 1995, well after the tax court applied collateral estoppel against the Department in 1993. Although *Brink* "changed the legal atmosphere" by determining that Irby's activity is *not* a retail sale, this change occurred well after the case now before us. Hence, *Brink* was not an *intervening* change in the law. We see no reason to apply *Brink* retroactively to disturb a settled dispute.

Our application of collateral estoppel will not *perpetuate* a tax exemption which will benefit Irby alone. Had *Brink* been decided before Irby did the work which gave rise to the claim for taxes in this case, we would apply the Restatement exception to the doctrine of collateral estoppel and require payment of the tax. Indeed, on oral argument, counsel for Irby conceded that in light of *Brink* it is doubtful that Irby can avoid the tax on any construction projects it undertakes in the future.

Therefore, we find that the tax court did not abuse its discretion in its application of collateral estoppel, and the decision is affirmed.

THOMPSON, P.J., and GARBARINO, J., concur.