No. 00-246

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 296

CITY OF CUT BANK,

Plaintiff and Appellant,

v..

DANIEL BIRD,

Defendant and Respondent.

APPEAL FROM:

District Court of the Ninth Judicial District,

In and for the County of Glacier,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Joseph P. Mazurek, Attorney General; Sarah A. Bond,

Assistant Attorney General, Helena, Montana

Robert G. Olson, Cut Bank City Attorney; Robert A. Smith

Deputy City Attorney, Cut Bank, Montana

For Respondent:

Terryl T. Healy, Attorney at Law, Cut Bank, Montana

Submitted on Briefs: December 14, 2000

Decided: December 27, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 The City of Cut Bank (City) appeals from the order of the Ninth Judicial District Court, Glacier County, granting, in part, the motion to suppress filed by Daniel Bird (Bird). We reverse.

¶2 The issue on appeal is whether the District Court erred in granting Bird's motion to suppress.

BACKGROUND

¶3 On May 25, 1999, Cut Bank City Police Officer Joshua Olson (Olson) observed a pickup truck with three occupants traveling through the City at a slow rate of speed. He followed the truck, observing that it traveled erratically and crossed over a double yellow line. Believing the driver might be intoxicated, Olson activated his patrol car's overhead lights to initiate a traffic stop. The truck did not stop when Olson attempted to stop it; rather, it increased its speed and headed west out of the City. Olson then activated his patrol car's siren and pursued the truck. These activities all took place within the jurisdictional limits of the City.

¶4 The truck proceeded out of the City and onto the Blackfeet Reservation (Reservation) with Olson following. Olson observed that the truck was traveling over the speed limit and erratically. He notified Glacier County dispatch that he was in pursuit, giving a description of the truck with its license plate number, and dispatch subsequently informed Olson that the truck was registered to Bird.

¶5 Olson was joined in his pursuit of the truck by Glacier County Sheriff's Deputy Jeff Kraft (Kraft). Although Kraft and Olson briefly lost sight of the truck, they eventually

discovered it apparently had crashed through a fence and come to rest in a field. Upon their arrival, they observed a man, identified as James Cole (Cole), standing at the front of the truck. Bird was located in the back seat of the truck's extended cab. After securing the two men, Kraft contacted dispatch and was informed that the men were enrolled members of the Blackfeet Tribe. Consequently, the Blackfeet Tribal Police dispatch was contacted and Tribal Officer Chris Cadotte (Cadotte) responded to the scene.

¶6 Cadotte took Bird and Cole into custody and transported them off the Reservation into the City where they were taken to the Glacier County Jail (Jail). Olson followed Cadotte back to the City. Kraft remained at the scene, where he discovered a third individual, identified as Gary Kramer (Kramer), hiding under the truck. Upon being discovered, Kramer stated that the truck belonged to Bird and Bird had been driving. Kraft, acting pursuant to authorization from Cadotte, subsequently transported Kramer to the Jail where Kramer repeated his statement that Bird had been driving the truck.

¶7 The City subsequently charged Bird with reckless driving, in violation of § 61-8-301(1)(b), MCA, which provides that a person commits the offense if he "operates any vehicle in willful or wanton disregard for the safety of persons or property while fleeing or attempting to flee from or elude a peace officer who is lawfully in pursuit . . . ." Bird moved to dismiss the case, arguing that the City had no jurisdiction to prosecute him because all the elements of the offense occurred on the Reservation. Alternatively, he moved to suppress all evidence obtained after his truck left the City limits and crossed onto the Reservation, arguing that his arrest was illegal because neither Olson nor Kraft had jurisdiction to effect an arrest on the Reservation and his transportation to the Jail violated the extradition provision of the Blackfeet Tribal Code. The City Court denied his motions, a jury trial was held and Bird was convicted of the reckless driving offense. Bird appealed his conviction to the District Court.

¶8 Bird renewed his alternative motion to dismiss or suppress in the District Court, asserting the same bases as in the City Court. The District Court denied the motion to dismiss, concluding that the determination of where the offense occurred was a question of fact which must be left to the jury. The court also denied the motion to suppress relating to the statements made by Kramer that Bird had been driving the truck. The court concluded, however, that neither Olson nor Kraft had jurisdiction to effect an arrest on the Reservation and, on that basis, granted the motion to suppress evidence of all activities conducted and statements made by Bird after his truck crossed the boundary between the City limits and the Reservation. The State appeals the grant of Bird's motion to suppress.

## STANDARD OF REVIEW

¶9 We review a district court's ruling on a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether its interpretation and application of the law are correct.  State v. Reesman, 2000 MT 243, ¶ 18, 301 Mont. 408, ¶ 18, 10 P.3d 83, ¶ 18.

## DISCUSSION

¶10 Did the District Court err in granting Bird's motion to suppress?

¶11 The District Court partially granted Bird's motion to suppress based on its conclusion that Olson and Kraft were without jurisdiction to arrest Bird while on the Reservation. The City asserts that the court's conclusion in this regard is erroneous and cites United States v. Patch (9th Cir. 1997), 114 F.3d 131, *cert. denied*, 522 U.S. 983 (1997), in support of its argument that Olson's pursuit and arrest of Bird were within his jurisdiction under the hot pursuit doctrine.

¶12 In Patch, a deputy sheriff was patrolling a portion of state highway located within the exterior boundaries of the Colorado River Indian Tribe Reservation when he observed a pickup truck commit a traffic offense.  Patch, 114 F.3d at 132.  The deputy had authority to arrest nonIndians--but not Indians--for traffic offenses on this part of the highway. Patch, 114 F.3d at 133.  The deputy had no knowledge of whether the driver was an Indian or not and he activated his patrol car's overhead lights in an attempt to stop the truck. Patch, 114 F.3d at 132.  Instead of stopping, however, the truck proceeded through a town and turned into the driveway of a private residence.  The deputy pursued the truck up the drive, got out of his patrol car and followed the driver, later identified as Patch, onto the porch of the residence.  When the deputy attempted to detain Patch by grabbing his arm, Patch pushed the deputy and went into the house.  An altercation ensued which resulted in Patch being subdued by two county officers, turned over to tribal authorities and charged with assault on the deputy.  Patch, 114 F.3d at 133.

¶13 Patch appealed his subsequent conviction on the offense, arguing that, because he was an Indian, the deputy had no authority to stop or arrest him and was, therefore, a trespasser at the private residence whom Patch could remove from the premises by using reasonable force.  Patch, 114 F.3d at 133.  The Ninth Circuit Court of Appeals affirmed Patch's conviction, holding that, when the deputy observed the traffic offense, he had authority to

stop Patch to ascertain if he was Indian or nonIndian in order to determine the deputy's jurisdiction to issue a citation. <u>Patch</u>, 114 F.3d at 134. According to the Ninth Circuit, such a stop was a logical application of the investigative stop doctrine developed in Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The court further held that, although the deputy's jurisdiction was limited to the state highway itself, once he observed an offense occur within his jurisdiction, he had the authority to pursue the offender out of the jurisdiction and into Indian country in order to arrest. <u>Patch</u>, 114 F.3d at 134. Specifically, the court stated that

> [u]nder the doctrine of hot pursuit, a police officer who observes a traffic violation within his jurisdiction to arrest may pursue the offender into Indian country to make the arrest.

<u>Patch</u>, 114 F.3d at 134.

¶14 Bird argues that <u>Patch</u> is distinguishable from this case because the deputy in that case was lawfully patrolling within the exterior boundaries of the reservation at the time he observed the traffic offense at issue, whereas here, Olson was "illegally present on the Blackfeet Reservation . . . ." While it is true that the jurisdiction in which the deputy was patrolling in <u>Patch</u>--the state highway through the reservation--overlapped with the jurisdiction of the Colorado River Indian Tribe along the same highway, that fact was not of consequence to the court's conclusion that the deputy was authorized to pursue Patch into Indian country. <u>See</u> <u>Patch</u>, 114 F.3d at 134, n.4. The rule enunciated in <u>Patch</u> requires only that the law enforcement officer observe the initial traffic offense within his or her jurisdiction, regardless of where that jurisdiction may be located in relation to the exterior boundaries of an Indian reservation.

¶15 Here, Olson observed a traffic offense committed within his jurisdiction and attempted to stop the offending driver and truck. When the truck left his jurisdiction without stopping, Olson was authorized to pursue it onto the Reservation to make an arrest. <u>Patch</u>, 114 F.3d at 134. We conclude, therefore, that the District Court's conclusion that Olson did not have jurisdiction to arrest Bird on the Reservation under the circumstances of this case is erroneous.

¶16 Bird contends in this regard, however, that the District Court was correct in granting his motion to suppress based on his alternative argument that his transport off the Reservation to the Jail was unlawful because it was not conducted in conformity with the

Blackfeet Tribal Code extradition procedures. In other words, he argues that the court reached the right conclusion, but for the wrong reason. He cites several cases for the proposition that, where an Indian tribe has adopted specific extradition procedures in its tribal code, the exclusionary rule requires the suppression of evidence where nontribal law enforcement officers fail to follow those procedures when arresting a criminal defendant on an Indian reservation. See, e.g., State of Arizona ex rel. Merrill v. Turtle (9th Cir. 1969), 413 F.2d 683; Benally v. Marcum (N.M. 1976), 553 P.2d 1270; State ex rel. Old Elk v. District Court of Big Horn (1976), 170 Mont. 208, 552 P.2d 1394.

¶17 The City concedes that Bird was not extradited from the Reservation under the Blackfeet Tribal Code procedures, but asserts that the failure to follow the extradition procedures should not result in the exclusion of evidence in this case. It cites State v. Nahee (Ariz. App. 1987), 745 P.2d 172, in support of its argument that a "good faith" exception to the exclusionary rule is applicable in this instance.

¶18 In Nahee, city police officers obtained a state warrant to arrest Nahee and contacted a tribal police officer to assist in the arrest. The tribal officer advised the city officers they needed a warrant from the tribal court to effect the arrest and such a warrant was obtained. The tribal officer then arrested Nahee on the reservation pursuant to the tribal warrant and transported him to the officers at the city police department. Nahee, 745 P.2d at 173.

¶19 Nahee eventually was charged with four felony offenses based on evidence obtained after he was arrested. He moved to suppress the evidence, arguing it had been obtained as a result of an illegal arrest because the extradition procedure set forth in the tribal code required that a defendant be brought before the tribal court prior to being taken off the reservation and this had not been done. Nahee, 745 P.2d at 173. The Arizona Court of Appeals held that the evidence should not be suppressed under the exclusionary rule because the city police officers had acted in good faith reliance that the tribal officer would carry out the arrest and extradition of Nahee in a manner conforming to the tribal code procedures and that it was the tribe's own law enforcement officer who made the mistake in procedure. Consequently, the primary purpose of the exclusionary rule--to ensure law enforcement is not rewarded by violating a defendant's constitutional rights and to deter such conduct in the future--would not be served by sanctioning the city officers for a mistake in which they had no part. Nahee, 745 P.2d at 174.

¶20 We are persuaded by the Nahee court's rationale. Here, when Olson and Kraft

discovered Bird was a member of the Blackfeet Tribe, they took no further action, but waited for a tribal police officer to arrive at the scene. When that officer--Cadotte-- arrived, he took custody of Bird. Olson testified at the hearing on the motion to suppress that it was Cadotte's decision to transport Bird off the Reservation and that Bird was transported in Cadotte's vehicle. In other words, neither Olson nor Kraft removed Bird from the reservation in violation of the Tribal Code extradition procedures. Rather, they relied on Cadotte to perform the transport in accordance with the Tribe's policy. We conclude that, under the circumstances of this case, the "good faith" exception to the exclusionary rule discussed in <u>Nahee</u> is applicable. As a result, Bird's "right result/wrong reason" argument that the District Court correctly granted his motion to suppress based on his improper extradition from the Reservation fails.

¶21 We hold that the District Court erred in granting Bird's motion to suppress.

¶22 Reversed and remanded for further proceedings.

/S/ KARLA M. GRAY

We concur:

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson, specially concurs:

¶23 I agree with our application of *United States v. Patch* (9th Cir. 1997), 114 F.3d 131, *cert. denied*, 522 U.S. 983, 118 S.Ct. 445, 139 L.Ed.2d 381 (1997).

¶24 I conclude, however, that Bird's second argument that the District Court was correct in granting his motion to suppress is largely irrelevant. Bird argued for and the District Court agreed with his motion to suppress based on his claim that his transportation off the Blackfeet Reservation to the jail was unlawful because it was not conducted in conformity with the Blackfeet Tribal Code extradition procedures. However, it is undisputed here that it was the tribal officer who unlawfully transported Bird off the Reservation and violated the Blackfeet extradition code, not the City of Cut Bank or Glacier County Sheriff's officers.

¶25 Under these facts, it is my view that century-old principles of extradition law control. Specifically, it is well recognized that challenges to irregularities in extradition proceedings must be made in the asylum state. The manner in which the accused is brought before the court of the demanding state by the asylum state has no effect on the court's subject matter jurisdiction in the demanding state, nor will such irregularities invalidate a subsequent conviction. Said another way, after the extradition is complete, the returned fugitive cannot, in the courts of the demanding state or country, question the good faith of the officials of the asylum state who conducted the extradition proceedings, in order to defeat the conviction. *Ker v. Illinois* (1886), 119 U.S. 436, 441-44, 7 S.Ct. 225, 228-29, 30 L.Ed. 421; *see also Pettibone v. Nichols* (1906), 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148; *United States v. Bin Laden* (S.D.N.Y. 2001), __ F.Supp.2d __, 2001 WL 831236, *5.

¶26 In the case at bar, if Bird has a complaint as to how his extradition was handled--or mishandled--his recourse is to take it up with the appropriate tribal officials. The matter of the botched extradition, however, has no effect on Bird's State prosecution, since the Montana law officers did not violate the Blackfeet extradition code.

¶27 On these authorities, I reject Bird's extradition argument and, therefore, concur in the result of that portion of our analysis.

/S/ JAMES C. NELSON

Justice Terry N. Trieweiler dissenting.

¶28 I dissent from the majority opinion which reverses the suppression order of the District Court.

¶29 The District Court's order is perfectly logical when considered in light of the charges against Bird. Bird was charged with reckless driving in violation of § 61-8-301(b), MCA, for eluding a Cut Bank police officer. The notice to appear and complaint issued by the arresting officer identifies the location of the offense as West Main Street in Cut Bank. In fact, had the offense occurred beyond the city limits of Cut Bank, city police would have had no authority to make the arrest. See § 7-32-4301, MCA.

¶30 The important point is that Bird was not charged with reckless driving based on conduct that occurred on the Blackfeet Reservation nor would any Cut Bank police officer

have had authority to arrest him based on conduct that occurred on the Reservation. Therefore, Bird's conduct after he crossed onto the Reservation was irrelevant and was evidence properly excluded.

¶31 The District Court's March 22, 2000, minute entry is the only record of the suppression order from which the City appeals. It states in relevant part as follows:

> It is the ruling of this court that the state of Montana did not have jurisdiction to effect the arrest on the Reservation, therefore the evidence that was acquired at the time of the stop would not be admissible, nor would evidence of actions that occurred after the vehicle crossed onto the Reservation be admissible. The actions of the vehicle from first being observed until it crossed out of the city limits and what happened at the sheriff's office and the statement of one witness (Garey Kramer) when he was at the sheriff's office would be admissible.

¶32 In other words, all of the evidence in any way relevant to the charges against Bird was specifically permitted by the District Court's order. That evidence was Bird's conduct within the city limits of Cut Bank and statements made by the passenger in his vehicle who identified him as the operator of the vehicle. None of the evidence actually suppressed by the District Court was in any way probative of Bird's guilt or innocence. Therefore, it is unnecessary to reach the issue of whether the District Court's jurisdictional analysis was correct.

¶33 For these reasons, I dissent from the majority opinion. I would affirm the order of the District Court.

/S/ TERRY N. TRIEWEILER