91 P.3d 1011

STATE of Arizona, Appellant/Cross–Appellee,

v.

Richard Rome WHELAN, Appellee/Cross–Appellant.

No. 1 CA–CR 02–0364.

Court of Appeals of Arizona, Division 1, Department A.

June 17, 2004.

Richard M. Romley, Maricopa County Attorney By Colleen L. French, Deputy County Attorney, Phoenix, Attorneys for Appellant/Cross–Appellee.

Frederick M. Aeed, Phoenix, Attorney for Appellee/Cross–Appellant.

## OPINION

BARKER, Judge.

¶ 1 We address in this Opinion issues concerning the applicability of collateral estoppel and related doctrines to an unappealed sup-

pression order in a case that was dismissed without prejudice and then refiled after an intervening change in the law.

### Pertinent Factual and Procedural Background

¶2 On August 28, 2000, Richard Rome Whelan ("Defendant") was arrested for one count of DUI while his driver's license was suspended ("Count 1") and one count of driving with a blood alcohol concentration of 0.10 or more within two hours of driving while his driver's license was suspended ("Count 2"). Defendant was originally charged in Maricopa County Cause Number CR 2000–014594 for those offenses.

¶3 Defendant filed a motion to suppress evidence of the results of the blood test on the ground that the medical assistant who drew the blood was not a "qualified person" to draw blood under Arizona Revised Statutes ("A.R.S.") section 28–1388(A) (Supp. 2003).[1] The trial court granted the motion to suppress the evidence on February 2, 2001, stating that "the blood draw was performed by a non-statutorily qualified person." Upon motion of the State, the court dismissed the case without prejudice on February 7, 2001. The order was not appealed.

¶4 On August 30, 2001, this court decided the case of State ex rel. Pennartz v. Olcavage, 200 Ariz. 582, 30 P.3d 649 (App.2001), which held that phlebotomists are "qualified persons" to draw blood in a DUI case under A.R.S. § 28–1388(A). Id. at 588, ¶21, 30 P.3d at 655. Based upon that decision, the State refiled the same two counts against Defendant in a new proceeding: CR 2001–017430. Defendant was reindicted on November 19, 2001.

¶5 Defendant then filed a motion to dismiss Count 2 of the indictment and to suppress the blood test results. He claimed that

the judge was bound by the previous ruling of the court, alleging theories of collateral estoppel and "law of the case." In its response, the State argued this court's decision in Olcavage created a change in circumstances that allowed the earlier decision to be revisited. The State also argued that under Rule 16.1(d) of the Arizona Rules of Criminal Procedure ("Rule"), good cause existed which allowed the trial court to redetermine the issue previously decided by the first judge. The trial court denied Defendant's motion to dismiss Count 2 of the indictment and suppress the blood test results.

¶6 The matter proceeded to trial. Defendant was convicted on Count 1, but acquitted on Count 2. Defendant was subsequently placed on supervised probation for four years. This appeal and cross-appeal followed.[2]

### Discussion

¶7 Defendant argues the trial court erred when it denied his motion to dismiss Count 2 of the indictment and suppress the blood test results. He claims the trial court was precluded from reconsidering the previous order suppressing the evidence on the grounds of res judicata, the doctrine of law of the case, and Rule 16.1(d). The State responds that the issue is moot because Defendant was acquitted on Count 2. However, as Defendant points out, if the trial court erred in denying the motion to suppress the blood test results as well as the motion to dismiss Count 2 of the indictment, the issue is not moot. Because the results of the blood test could have influenced the jury in reaching its verdict on Count 1,[3] we must determine if the trial judge in the second proceeding was bound by the decision in the earlier proceeding. Therefore, we must address the merits of Defendant's claim.

---

1. This section was added by the legislature in 1998. 1998 Ariz. Sess. Laws, ch. 302, § 27. This Opinion refers to the current version of the statute, which is essentially the same as that in effect when Defendant was originally charged in CR 2000–014594.

2. We simultaneously file a Memorandum Decision which rules on other issues raised on appeal and by way of cross-appeal.

3. The blood test showed an alcohol content of 0.071. At trial, and extrapolating from that result, one of the State's witnesses testified that Defendant's blood alcohol content within an hour of his arrest would have been 0.104.

## 1. Law of the Case and Rule 16.1(d)

¶ 8 As an initial matter we note that this issue does not implicate the doctrine of the law of the case. " 'Law of the case' concerns the practice of refusing to reopen questions previously decided in the *same* case by the same court or a higher appellate court." *Davis v. Davis*, 195 Ariz. 158, 162, ¶ 13, 985 P.2d 643, 647 (App.1999) (quoting *Kadish v. Ariz. State Land Dep't*, 177 Ariz. 322, 327, 868 P.2d 335, 340 (App.1993)) (emphasis added). The doctrine of law of the case is a rule of procedure rather than substance, and "does not deprive a judge of the power to change his or her own nonfinal rulings or the nonfinal rulings of another judge of that same court *sitting on the same case* simply because the question was ruled on at an earlier stage." *Id.* at 162, ¶ 14, 985 P.2d at 647 (emphasis added; citation omitted). Thus, the doctrine applies in the context of the *same* case throughout its entire duration, including any appeals, remands and appeals after remand. *See, e.g., State v. King*, 180 Ariz. 268, 279, 883 P.2d 1024, 1035 (1994) ("At the trial court level, the doctrine of the law of the case is 'merely a practice that protects the ability of the court to build to its final judgment by cumulative rulings, with reconsideration or review postponed until after the judgment is entered.' " (quoting 1B James W. Moore, Moore's Federal Practice ¶ 0.404[4.1] (2d ed.1992)); *State v. Waldrip*, 111 Ariz. 516, 518, 533 P.2d 1151, 1153 (1975) (decision of an appeals court in a prior appeal of the same case cannot be raised again in a subsequent appeal).

¶ 9 Rule 16.1(d), like the law of the case doctrine, is procedural and applies in the setting of the *same* case. As Rule 16.1(a) expressly provides, "[t]his rule shall govern the procedure to be followed in cases *between arraignment and trial*." (Emphasis added.) Rule 16.1(d) expressly allows for the court in that setting to reconsider pre-trial rulings "for good cause."[4] *See King*, 180 Ariz. at 278–79, 883 P.2d at 1034–35 (explaining the

law of the case doctrine and referencing Rule 16.1(d)).

¶ 10 In this matter, although the underlying facts in each prosecution were identical and the charges were the same, there were two separate actions. Neither the law of the case doctrine nor Rule 16.1(d) directly applies in this setting. We realize that "law of the case" is the term utilized by this court in *State v. Nahee*, 155 Ariz. 114, 115, 745 P.2d 172, 173 (App.1987), relied upon by the dissent. *Nahee* may have involved a subsequent proceeding, rather than the same proceeding. *See id.* ("the charges were reinstated"). However, given the precedents we have set forth above, we do not believe *Nahee's* utilization of that term to be well-chosen. The proper question is not whether the law of the case doctrine or Rule 16.1(d) precludes reconsideration, but whether the principles of res judicata, and more specifically, the subsidiary doctrine of *collateral estoppel* (or "issue preclusion") precludes the trial court from considering afresh, in a subsequent proceeding, the suppression order entered in the earlier proceeding.

¶ 11 Before turning to that question, however, we note that the distinctions between whether law of the case and Rule 16.1(d) apply as opposed to collateral estoppel may be seen as turning on the type of "hypertechnical" analysis the Supreme Court has encouraged us to eschew in this area of the law. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (quoting *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948)) ("the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality ... [t]he inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceeding.' "). The distinction as to which doctrine to apply is not outcome determinative here.[5] We now turn

---

4. Rule 16.1(d) provides in full as follows: "Except for good cause, or as otherwise provided by these rules, an issue previously determined by the court shall not be reconsidered."

5. As the following discussion will show, our determination as to the inapplicability of collateral estoppel is based on an intervening change in the law. *Infra* ¶¶ 13–15. Because of that, we emphasize that our conclusion based on collateral estoppel principles would be no different if we

to a consideration of collateral estoppel, which we believe to be the applicable legal doctrine.

### 2. Collateral Estoppel

 ¶ 12 Our cases hold that "[c]ollateral estoppel is incorporated in the Fifth Amendment guarantee against double jeopardy binding on the states through the due process clause of the Fourteenth Amendment." *State v. Stauffer,* 112 Ariz. 26, 29, 536 P.2d 1044, 1047 (1975) (citing *Ashe,* 397 U.S. at 443, 90 S.Ct. 1189). In criminal cases, collateral estoppel is not favored and is therefore applied sparingly. *State v. Rodriguez,* 198 Ariz. 139, 141, ¶ 6, 7 P.3d 148, 150 (App.2000) (citing *Standefer v. United States,* 447 U.S. 10, 22–25, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980)).

 ¶ 13 Our supreme court has held that "[t]he traditional elements of collateral estoppel are: [1] the issue sought to be relitigated must be precisely the same as the issue in the previous litigation; [2] a final decision on the issue must have been necessary for the judgment in the prior litigation; [and][3] there must be mutuality of parties." *State v. Jimenez,* 130 Ariz. 138, 140, 634 P.2d 950, 952 (1981); *see also Rodriguez,* 198 Ariz. at 141, ¶ 5, 7 P.3d at 150 (same). There is an issue presented in this case as to element two: whether there was "a *final decision* on the issue [that] *must have been necessary for the judgment* in the prior litigation." *Jimenez,* 130 Ariz. at 140, 634 P.2d at 952 (emphasis added). This is so because the suppression order, though appealable under A.R.S. § 13–4032(6) (2001), was an *interlocutory* order and our cases have construed the "final decision" requirement to mean that "[f]or collateral estoppel to apply ... a valid and final decision *on the merits* must have been entered." *Garcia v. Gen. Motors Corp.,* 195 Ariz. 510, 514, ¶ 9, 990 P.2d 1069, 1073 (App. 1999) (emphasis added); *see also Campbell v.*

*SZL Properties, Ltd.,* 204 Ariz. 221, 223, ¶ 9, 62 P.3d 966, 968 (App.2003) (same).

¶ 14 The question as to whether an interlocutory suppression order, subject to appeal, is final for purposes of collateral estoppel has not been directly answered in Arizona. There is a dispute among the jurisdictions about whether collateral estoppel applies to such an order, even if that order is final for purposes of appeal. *Compare People v. Williams,* 59 Ill.2d 557, 322 N.E.2d 461 (1975) (state collaterally estopped to relitigate suppression order in subsequent proceeding where state had a right, but chose not to appeal), *with State v. Beezley,* 752 S.W.2d 915 (Mo.Ct.App.1988) (holding that collateral estoppel does not apply to an unappealed suppression order even when there is a right to appeal); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. b (1982) ("The fact that a trial order may be reviewable by interlocutory appeal ... does not necessarily mean that the matter resolved in the order should be treated as final for purposes of res judicata."). Although there is no Arizona case that directly addresses this issue, we need not reach it here as Arizona has adopted an exception to the doctrine of collateral estoppel that would otherwise preclude its application in this case.

¶ 15 The Restatement (Second) of Judgments § 28 provides as follows:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

. . .

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) *a new determination is warranted in order to take account of an intervening change in the applicable legal context.*

---

applied law of the case or Rule 16.1(d). Under those doctrines, there was sufficient basis for the second judge to reconsider the ruling based on the intervening change in the law if this action were one proceeding instead of two. *See* Rule 16.1(d) (permitting reconsideration for "good cause") and *King,* 180 Ariz. at 278–79, 883 P.2d

at 1034–35 (holding that law of the case is procedural, not substantive, and a "court does not lack the power to change a ruling simply because it ruled on the question at an earlier stage") (quoting *Love v. Farmers Ins. Group,* 121 Ariz. 71, 73, 588 P.2d 364, 366 (App.1978)).

(Emphasis added.) This exception to the application of collateral estoppel has been expressly adopted in Arizona. *Irby Constr. Co. v. Arizona Dep't of Revenue*, 184 Ariz. 105, 109, 907 P.2d 74, 78 (App.1995) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 600, 68 S.Ct. 715, 92 L.Ed. 898 (1948)) (citing § 28(2) and holding that "[t]he Restatement's exception is appropriate when 'a judicial declaration *intervening* between the two proceedings ... change[d] the legal atmosphere as to render the rule of collateral estoppel inapplicable' ").

¶ 16 Application of the exception is appropriate here. *See Barnes v. Outlaw*, 192 Ariz. 283, 285, 964 P.2d 484, 486 (1998) ("[A]lthough we generally follow the Restatement absent statutes or case law to the contrary, we will not do so blindly.") The suppression order at issue was based on the premise that a medical assistant could not be a "qualified person" under A.R.S. § 28–1388(A). After the suppression order, and the subsequent dismissal without prejudice, this court decided *Olcavage*. 200 Ariz. 582, 30 P.3d 649. That case provided that a phlebotomist was a "qualified person" under the statute. *Id.* at 588, ¶ 21, 30 P.3d at 655. In the context of this case, *Olcavage* clearly presented circumstances such that "a new determination [was] warranted in order to take account of an intervening change in the applicable legal context." RESTATEMENT (SECOND) OF JUDGMENTS § 28(2)(b). Thus the trial judge was right in not applying collateral estoppel on these grounds. Having properly denied the collateral estoppel issue based on the intervening change in law, the trial judge then correctly applied that law and determined that a medical assistant, like a phlebotomist, was a "qualified person" under the statute.[6] The blood test results were properly admitted.

¶ 17 Accordingly, even if we were to conclude (and we expressly reserve this issue) that the suppression order presented a "valid and final decision on the merits," *Garcia*, 195 Ariz. at 514, ¶ 9, 990 P.2d at 1073, the exception under § 28(2) would prevent application of collateral estoppel in this case.

### 3. *State v. Nahee*

¶ 18 Defendant, and our dissenting colleague, rely upon *State v. Nahee* to reach a contrary result. In that case, the defendant, a member of the Yavapai Apache Tribe, was charged with four felony offenses. *Nahee*, 155 Ariz. at 115, 745 P.2d at 173. The defendant moved to dismiss the prosecution on the ground that under tribal law, the State of Arizona did not have personal jurisdiction over him because a tribal regulation required that the defendant be released to tribal authorities and an officer with the Bureau of Indian Affairs had turned him over to the Clarkdale, Arizona police. The court granted the motion. *Id.* The defendant later voluntarily submitted to the jurisdiction of the court "and the charges were reinstated." *Id.* In the second proceeding, the defendant moved for the suppression of evidence. There was no suppression hearing in the first proceeding. Indeed, there was no motion to suppress filed in the first proceeding.

¶ 19 The basis for the motion to suppress in the second proceeding was that the exclusionary rule required suppression due to the violation of the tribal regulation. *Id.* The issue was "whether the mistakes of the tribal authorities are visited upon the state prosecution in the form of the invocation of the exclusionary rule." *Id.* at 114, 745 P.2d at 172. We rejected this argument and found the evidence admissible.

¶ 20 As a prelude to its analysis, the *Nahee* court noted that "because the State failed to appeal [the trial court's] order finding that the State of Arizona lacked jurisdiction ... this ruling is the law of the case and binding on the State in this appeal." *Id.* at 115, 745 P.2d at 173. The *Nahee* court made this statement while also stating in a footnote that the earlier decision on the tribal regulation "[i]n fact ... was erroneous." *Id.* at 115 n. 2, 745 P.2d at 173 n. 2. This is the portion of the case upon which Defendant and the dissent rely.

---

**6.** After Defendant was convicted and sentenced, this court decided *State v. Carrasco*, 203 Ariz. 44, 49 P.3d 1140 (App.2002), which held that a medical assistant is a qualified person to draw blood in a DUI case under A.R.S. § 28–1388(A).

¶ 21 As noted earlier, if we consider *Nahee* to deal with a subsequent proceeding, it used "law of the case" language when it should have referenced "collateral estoppel." *Supra* ¶¶ 9, 10. We consider the case here as though it had used the proper terminology.

¶ 22 In our view, *Nahee* is quite clearly distinguishable. First, the order at issue in *Nahee* was the order of dismissal itself; it was not an interlocutory order. The order at issue here, a suppression order, was an interlocutory order that was subject to appeal. This distinction presents a completely different analysis as to whether there is a "final decision" for purposes of collateral estoppel. This is because an interlocutory order does not resolve a matter on the merits and may or may not be essential to the judgment. *See Garcia,* 195 Ariz. at 514, ¶ 10, 990 P.2d at 1073 (when determining whether to apply collateral estoppel to a ruling on a motion in limine, "[w]hether a ruling is essential must be determined on a case-by-case basis"); *see also supra* ¶ 14. *Nahee* neither mentioned nor addressed the considerable issue as to whether an interlocutory evidentiary ruling, subject to appeal, is a final decision for purposes of collateral estoppel analysis. The issue was not present.

■ ¶ 23 Second, in *Nahee* there was no intervening change in the law. We do not address here the issue of whether an erroneous determination in a prior decision (without an intervening change in the law) qualifies for collateral estoppel.[7] To the extent *Nahee* rules or decides any issue in this regard, it is that an erroneous determination, with no intervening change in facts or law, can still qualify for collateral estoppel treatment. The issue here is different: it is whether the *Olcavage* case decided after the suppression order in the first proceeding required (or permitted) a "a new determination [in the second proceeding] ... in order to take account of an *intervening change* in the applicable legal context." RESTATEMENT (SECOND)

OF JUDGMENTS § 28(2) (emphasis added). There was no intervening change in *Nahee.* There was, as the dissent acknowledges, such an intervening change here. The § 28(2) exception has been expressly followed in Arizona. *Irby Constr.,* 184 Ariz. at 109, 907 P.2d at 78. Thus, *Nahee* is clearly distinguishable on these grounds as well.

¶ 24 Third, as to the brief reference in *Nahee* to law of the case itself, the dissent candidly acknowledges that the "explanation appears to be dicta." *Infra* at ¶ 33. We agree with that assessment. The issue in *Nahee* was whether the exclusionary rule should apply to state authorities after an error by tribal authorities in applying a pretrial tribal regulation. 155 Ariz. at 114, 745 P.2d at 172. The *Nahee* court made no attempt to analyze the issue of whether a prior ruling was binding in a subsequent case. The case contains one sentence of text and two sentences in a footnote that pertain to the issue.

¶ 25 In short, we do not find *Nahee* to be applicable precedent to the issue presented here.

### Conclusion

¶ 26 For the foregoing reasons, and those set forth in the accompanying Memorandum Decision, we affirm Defendant's conviction and remand the matter to the trial court for resentencing consistent with this court's decision.

CONCURRING: ANN A. SCOTT TIMMER, Judge.

GARBARINO, Judge, dissenting.

¶ 27 The defendant was originally charged in Maricopa County Cause Number CR 2000–014594 with one count of DUI while his driver's license was suspended and one count of driving with a blood alcohol concentration of 0.10 or more within two hours of driving

---

7. We likewise do not address whether an erroneous determination, without an intervening change in the law, is or is not a sufficient basis to reconsider an earlier decision under Rule 16.1(d). We do note, however, that "reliance upon law of the case does not justify a court's refusal to reconsider a ruling when an error in the first decision renders it manifestly erroneous or unjust." *Powell–Cerkoney v. TCR–Montana Ranch Joint Venture, II,* 176 Ariz. 275, 279, 860 P.2d 1328, 1332 (App.1993). *See also State v. Wilson,* 207 Ariz. 12, 15, ¶ 9, 82 P.3d 797, 800 (App.2004) (same).

while his driver's license was suspended. Following the trial court's grant of his motion to suppress on the ground that the medical assistant was not qualified to draw blood under A.R.S. § 28–1388(A), the State moved to dismiss the charges without prejudice. The trial court granted the State's motion and the resulting order of dismissal was never appealed.

¶ 28 Approximately seven months later, *Olcavage* was decided. 200 Ariz. at 582, 30 P.3d at 649. The thrust of that decision was to validate the status of the medical assistant drawing the defendant's blood as one qualified to draw blood within the meaning of A.R.S. § 28–1388(A). *Id.* at 588, 30 P.3d at 655. *Olcavage* clearly made the trial court's first suppression ruling incorrect.

¶ 29 Following *Olcavage*, the State re-filed the charges. The defendant filed a motion to dismiss Count 2 of the indictment, arguing that the judge was bound by the ruling in the first case, Maricopa County Cause Number CR 2000–014594.

¶ 30 The first issue is whether the doctrine of collateral estoppel precluded the trial judge from reconsidering the suppression order entered in Maricopa County Cause Number CR 2000–014594. It must be remembered that the State never appealed the order of suppression following their motion to dismiss.

¶ 31 The defendant relies upon *Nahee*, 155 Ariz. at 115, 745 P.2d at 173, for the proposition that because the State failed to timely appeal the suppression ruling, it became the "law of the case." In *Nahee*, a police officer with the Bureau of Indian Affairs, armed with a tribal warrant, arrested the defendant on the Yavapai Indian Reservation for a crime that had been committed off of the reservation. *Id.* at 115, 745 P.2d at 173. The police officer transported the defendant to Clarkdale and turned him over to the Clarkdale police. *Id.* Section 6.35 of the Yavapai Apache Code required the officers to return the defendant to the *"Tribal Court for release to off-reservation authorities."* *Id.* (emphasis in original). The officers failed to

comply with this section of the code. *Id.* When the defendant was brought before the Yavapai County Superior Court, the court dismissed the State's case against the defendant for lack of jurisdiction. *Id.* In doing so, the court did not rule on any substantive issues. The State failed to timely appeal. *Id.*

¶ 32 Subsequently, the defendant submitted to the jurisdiction of the superior court. *Id.* Upon submitting to the jurisdiction of the court, the defendant filed a motion to suppress. *Id.* In his motion, the defendant argued that based upon the court's dismissal for lack of jurisdiction, he had been illegally arrested and the physical evidence obtained as a result of the illegal arrest should be suppressed. *Id.* The court granted the motion and the State dismissed the case without prejudice and appealed. *Id.*

¶ 33 On appeal, this Court explained that although the trial court erroneously dismissed the case for lack of jurisdiction, the ruling was the "law of the case" because the State failed to timely appeal. *Id.* at 115 n. 2, 745 P.2d at 173 n. 2. Although this explanation appears to be dicta, it was necessary because had jurisdiction been proper, the defendant's motion to suppress would have failed without further analysis. *See id.* at 115, 745 P.2d at 173.

¶ 34 The facts in *Nahee* are consistent with those in the present case. Here, the State moved to dismiss the case without prejudice so that it could appeal the trial court's suppression ruling. The State, however, did not appeal. When this Court decided *Olcavage*, there were no charges pending against the defendant. The time for appeal had expired. Therefore, the case was not pending at the time that the law was clarified.[8]

¶ 35 Once there has been a ruling adverse to the State and the case is dismissed, if the State then fails to appeal, the ruling becomes the "law of the case." The State cannot sit back, wait for the law to change, and then reinstate the charges. If the State believes that the trial judge erred or that the existing

---

8. Although the first action was dismissed, the doctrine of "law of the case" applies because the State reindicted the defendant on the same

charges that arose out of the same transaction or occurrence as the original indictment. *See, e.g., Nahee*, 155 Ariz. at 115, 745 P.2d at 173.

law was erroneous, it must protect its position by timely filing an appeal.

¶ 36 The State argues that even if the blood evidence was improperly admitted, the defendant was acquitted of Count 2 (BAC of 0.10 or more) and the evidence was not relevant to Count 1 (driving while impaired to the slightest degree). I disagree.

¶ 37 Reversal is warranted when inadmissible evidence is put before the jury and it results in prejudice to a defendant. *See Celaya*, 135 Ariz. at 256, 660 P.2d at 857. A defendant is prejudiced if it appears "reasonably possible" that the inadmissible evidence "might have materially influenced the jury." *Id.*

¶ 38 Here, the State was not able to prove that the defendant had a BAC of 0.10 or more within two hours of driving while his driver's license was suspended, as alleged in Count 2. The jury, however, found the defendant guilty of Count 1, which alleged that the defendant had been driving while impaired to the slightest degree while his driver's license was suspended. The admission of blood evidence reflecting the defendant's ingestion of alcohol was highly relevant to the allegation that the defendant was impaired to the slightest degree. Although the State was not able to prove that the defendant had a BAC of 0.10 or more within two hours of driving, the evidence strongly suggests that the defendant had alcohol in his blood. The jury could have reasonably concluded that the defendant was impaired to the slightest degree because he had ingested alcohol as reflected by the blood test. The admission of the blood evidence prejudiced the defendant.

¶ 39 I would reverse the defendant's conviction and sentence.